Submitted December 2, affirmed December 23, 1959

## STEIBER *v.* PALUMBO ET AL

347 P. 2d 978

Nicholas Granet, Portland, filed a brief for appellant.

Wilber Henderson, Portland, filed a brief for respondent.

ROSSMAN, J.

This is an appeal by the plaintiff from a judgment which the circuit court entered in the defendants' favor after it had sustained the defendants' motion for an involuntary nonsuit. The action was based upon a contention that when the defendants sold to the plaintiff a new house, February 27, 1951, the law implied in her favor a warranty of good quality and that the warranty was breached to the plaintiff's damage. The defendants are four in number: A and A Construction Co., Inc., a corporation, together with Anton, Louis and Alex Palumbo. Title to the property, a city lot in Portland, was vested in the corporation. The Palumbos were the builders of the house and were the officers of the corporation. The construction of the house was complete when the plaintiff inspected and purchased it. Its purchase price was $7400.

An averment of the complaint states:

"* * * on February 27th, 1951, when defendant sold the said new house to the plaintiff the defendants impliedly warranted to the plaintiff that the said house was in good condition of substantial and sturdy construction throughout, including the foundation of said house, and that the land upon which said house was located, was firm and capable of supporting said house."

The complaint further alleged that the house "was not built on firm land, but on the contrary was built upon a 'fill' which was not solid, was unstable, and incapable of supporting said house, all in breach of defendant's said warranty. * * * said house has settled and settled unevenly * * *." The complaint makes no charge of fraud, misrepresentation, overreaching, breach of express agreement or lack of opportunity for adequate inspection before purchase.

The answer denied the complaint's charges. We will assume that the evidence supports the charge that the house was built upon a fill and that it settled in such a manner that its usefulness and value were materially impaired.

The plaintiff's (appellant's) brief, with commendable frankness, states:

"The appellant tried this cause upon the theory of implied warranty and the appellant submitted an amendment during the trial of the cause for the purpose of specifically alleging an implied as well as an express warranty (Tr. 35). The trial Court at all times assumed that the plaintiff would be entitled to proceed on either an express or an implied warranty by alleging a warranty generally (Tr. 36). And, in fact, the basis of the Court's ruling in sustaining defendants' motion for a non-suit was that there is no such thing in law as implied warranty in the sale of real property. * * *"

In sustaining the defendants' motion for a non-suit the trial judge ruled: " * * * there is no such thing as an implied warranty in connection with the sale of real property."

The plaintiff presents only this assignment of error:

"The Court erred in sustaining the motion for nonsuit."

■ The complaint was not filed until almost six years after the plaintiff had purchased the property. Before the purchase the plaintiff inspected the house and lot to the extent that she wished. In the consummation of the transaction only three papers were employed: an earnest money receipt, a deed and a mortgage. The mortgagee was not any of the defendants. None of the three papers contains any warranty of the quality of the house or the character of the soil under it. In fact, none of the papers employs the word

"house" or any equivalent of that term. The deed contains the usual warranties of title but no others. It is apparent that if the plaintiff is entitled to prevail she must do so on the basis of an implied warranty. The purchase money receipt was signed February 27, 1951. The deed was signed and delivered May 8, 1951.

ORS 93.140 provides:

"No covenant shall be implied in any conveyance of real estate, whether it contains special covenants or not."

The domain of that language is very extensive. It would be impossible to broaden it.

Williston on Contracts, revised edition, § 926, states:

"The doctrine of *caveat emptor* so far as the title of personal property is concerned is very nearly abolished, but in the law of real estate it is still in full force. One who contracts to buy real estate may, indeed, refuse to complete the transaction if the vendor's title is bad, but one who accepts a deed generally has no remedy for defect of title except such as the covenants in his deed may give him. Therefore, if there are no covenants, he has no redress though he gets no title. * * * Still more clearly there can be no warranty of quality or condition implied in the sale of real estate * * *.

"It is generally true also that any express agreements in regard to land contained in a contract to sell it are merged in the deed if the purchaser accepts a conveyance. If, indeed, the vendor has made misrepresentations, even innocently, rescission is possible in most jurisdictions, but no remedy is generally available for any breach by the vendor of any promise contained in the contract but omitted in the deed."

No decision has come to our attention which permitted recovery by the vendee of housing upon a theory of implied warranty although Allison Dunham,

"Vendor's Obligation as to Fitness of Land for a Particular Purpose," 77 Minn Law Rev 108 (1953) argues that the law will move in this direction in the case of the supplier of new housing. Professor Dunham reasons that in this situation the vendee should have a right to rely on the contractor's skill and judgment that the house is fit for habitation. No such right would arise, as that author concedes, in the resale of used housing since the vendor normally has no greater skill than the buyer. As to the present state of the law Professor Dunham reports it as follows:

> "On the sale of completed new housing or second hand housing there seems to be no obligation on the seller as to latent defects in the quality of the land and improvements unless the obligation is one sounding in fraud for concealment of defects known to the seller. * * *"

Possibly one can detect sympathy with Professor Dunham's views as to the future of the law in *Levy v. C. Young Construction Co.*, 26 NJ 330, 139 A2d 738 (1958), affirming 46 NJ Super 293, 134 A2d 717 (1957). The purchaser of a new house had difficulty with the sewer line starting a year after the sale and was put to considerable expense to correct the difficulty. Then he sued the contractor on the theory of implied warranty, and recovered a judgment in the trial court. This judgment was reversed in the superior court, Justice Waesche dissenting. The majority said:

> "* * * Absent any covenant binding defendant to sell a well constructed house, plaintiffs cannot sue on an implied warranty. * * * That the rule of *caveat emptor* applies, and that there are no implied warranties in the sale of real estate, has been criticized, especially when applied to the sale of new housing, '*Vendor's Obligation as to*

*Fitness of Land for a Particular Purpose,'* 77 Minn. L. Rev. 108 (1953); and see *'Right of Purchaser in Sale of Defective House,'* 4 Western Reserve L. Rev. 357 (1953).

\*　　\*　　\*

"As defendant notes, the policy reasons underlying the rule that the acceptance of a deed without covenants as to construction is the cut-off point so far as the vendor's liability is concerned, are rather obvious. Were plaintiffs successful under the facts presented to us, an element of uncertainty would pervade the entire real estate field. Real estate transactions would become chaotic if vendors were subjected to liability after they had parted with ownership and control of the premises. They could never be certain as to the limits or termination of their liability. The rule which we impose in the circumstances of the present action works no harshness on purchasers of real estate. Plaintiffs had an opportunity to protect themselves by extracting warranties or guarantees from the defendant in the contract of sale and by reserving them in the deed. \* \* \*"

Judge Waesche, in his dissent, argued as follows:

"The defendant is a developer, and erected the house involved in this suit to sell to any one who would want it for a home. The plaintiff was such a person.

"Since the defendant was in the business of erecting houses to sell, it represented that it possessed a reasonable amount of skill necessary for the erection of a house. This representation was impliedly made to whomever purchased from the defendant a house erected by it for the purpose of selling. Such a representation is indispensable to effectuate the sale of a house erected, by a developer, for the purpose of selling. Otherwise there would be no sales. A person in the business of building houses to sell is fully aware that a purchaser relies upon such an implied representation. Since the defendant impliedly represented

that it possessed a reasonable amount of skill requisite for the erection of a house, it follows that it also impliedly represented that the house was erected in a proper and reasonably workmanlike manner. * * *"

The Supreme Court of New Jersey affirmed the superior court's dismissal of the suit, but did not adopt the reasoning of the majority. It based affirmance on the sole ground that the evidence affirmatively showed the contractor was not at fault. It said:

"We conclude there is no liability here, but for reasons totally different from those relied upon by the Appellate Division. Whether the widely established rule followed below is harsh and inequitable and should be rejected, or whether it is sound and workable and should be adopted, is a question we are not called upon to decide in light of our view of the case *sub judice.*

In *Harmon Nat. Real Estate Corporation v. Egan,* 137 Misc Rep 297, 241 NYS 708 (1930), suit was brought by a mortgagee and the defendant mortgagor counterclaimed on the ground "that at the time the house was sold to the defendant, the plaintiff well knew that the same was uninhabitable." The court said:

"* * * For after the contract of sale has become executed and the conveyance accepted, the grantee must rely solely on the covenants in his deed. If his deed contains no covenants, he is without remedy, either for eviction or incumbrance. Andrew D. Baird Holding Corporation v. Burns Bros., 209 App.Div. 601, 204 N. Y. S. 820. And as pointed out in Lewy v. Clark Ave., 128 Misc. Rep. 16, 217 N. Y. S. 185: 'Upon the sale of real property the rule of caveat emptor applies. 27 R. C. L., p. 668, § 431. In the absence of a covenant, this applies even to a question of title, and hence must apply to a question of the condition of the property. No implied covenant arises from a conveyance of real

property. Real Property Law, § 251; Logan v. United Interests, Inc., 236 N. Y. 194, 197, 140 N.E. 240; Murray v. Smith, 1 Duer [8 N. Y. Super. Ct.] 412, 427, 428.' "

The New York statute cited by the court (Real Property Law § 251) as support for its holding "No implied covenant arises from a conveyance of real property" is the same as ORS 93.140.

*Kerr v. Parsons,* 83 Ohio App. 204, 82 NE2d 303 (1948), was based upon the plaintiff's purchase of a second-hand house. After purchase he brought an action for damages against the seller on the ground that the latter had falsely represented that a well on the premises would supply enough water for household uses. A verdict and judgment for the defendant were reversed because of prejudicial instructions. Inter alia it was noted that the trial court had charged as to warranty. In reversing, the appellate court said:

> "Included in the general charge is a charge on warranty, which might be applicable in a sale of personal property under Sections 8394 and 8395, General Code, but seems to have no application to a sale of real estate.

> "Ordinarily there is no implied warranty as to the condition of real estate sold or leased, and oral evidence of a warranty would not be admissible to add to a deed or lease.  *  *  *"

*Shapiro v. Kornicks,* 103 Ohio App 49, 124 NE2d 175 (1955), followed *Kerr v. Parsons.* In that case plaintiff purchased a newly completed house from the defendant building contractor. Thereafter the following defects, according to the plaintiff, developed: "leaking basement, crumbling front steps, cracked front door, radial cracks in basement floor, support column for steel beam, dark red stain in back and insufficient

coats of paint." Plaintiff sued for damages and re-
covered judgment. His theory of the case was express
or implied warranty. The judgment was reversed, the
court holding upon the authority of *Kerr v. Parsons*
that there was no implied warranty.

In *Dennison v. Harden,* 29 Wash 2d 243, 186 P2d
908 (1947), plaintiff had purchased land on which
there was an orchard. In suing for damages, oral
evidence was offered that the defendant seller had
warranted the trees to be of a particular commercial
species but that they were in fact scrubs. The testi-
mony was excluded and a judgment of dismissal
rendered. In contending that the parol evidence should
have been admitted, plaintiff argued on appeal, inter
alia, that there was an implied "warranty of variety."
The court dismissed this argument, stating:

> "Without discussing under what circumstances
> implied warranties may be relied upon in the sale
> of personal property, we will dispose of appellant's
> argument on this point by saying that we have
> found no cases, and appellant has cited none, which
> recognize that there is such a thing as an implied
> warranty in the sale of real estate.  *  *  *"

In *Berger v. Burkoff,* 200 Md 561, 92 A2d 376 (1952),
the plaintiffs purchased new homes from defendant
building contractor and discovered that their base-
ments were improperly waterproofed. They sued for
damages on the theory that "the Defendants war-
ranted to the Plaintiffs that the basement of said
premises  *  *  *  was waterproofed and would re-
main dry  *  *  *." Summary judgment for the de-
fendant contractor was granted and affirmed on appeal.
The court said:

> "Appellants contend in this Court that there
> was an implied warranty, not expressed, to furnish
> a structurally satisfactory house. They cited no

authority to sustain this contention. In Williston on Contracts, Volume 4, 'Section 926, There are no implied warranties in sales of real estate,' it is said: 'The doctrine of *caveat emptor* so far as the title of personal property is concerned is very nearly abolished, but in the law of real estate is it still in full force * * *. Still more clearly there can be no warranty of quality or condition implied in the sale of real estate and ordinarily there cannot be in the lease of it.' * * * We do not find any implied warranties in these agreements of sale."

A recent New York decision has also refused to find an implied warranty where the builder failed to waterproof a basement. *Dolezel v. Fialkoff*, 2 AD2d 642, 151 NYS2d 734 (1956, AD3d).

In *Combow v. Kansas City Ground Investment Company*, 358 Mo 934, 218 SW2d 539, 8 ALR2d 213 (1949), the plaintiff and her husband purchased from the defendant an old house which the defendant had extensively remodeled. Six days after the completion of the transaction the plaintiff was injured when the ceiling plaster of one of the rooms fell upon her. She thereupon sued in tort for her personal injuries. At the close of the evidence the trial court sustained the defendant's motion for a directed verdict. In affirming the judgment the Supreme Court said:

"It seems to be well settled in this state and other jurisdictions that, absent an express agreement to the contrary, a seller of real estate cannot be held liable for defective condition of the premises. * * *

"We quote from Smith v. Tucker, supra, 151 Tenn 347, 270 S.W. loc. cit. 70, 41 A.L.R. loc. cit. 836:

" 'Whatever may be the reason, no case can be found in the books where the vendor has been held liable in damages to the vendee, or to third

persons, for personal injuries arising from defects in the premises. Whether this be on grounds of public policy, or because the rule of caveat emptor governs, and no warranty will be implied (Williston on Contracts, Vol. 2 § 926), or whether it be because the precedent negotiations are supplanted by the deed when the vendee receives it (27 R.C.L. 529), or whether the reason is to be found in the fact that the delivery of the deed practically terminates the relation of vendor and purchaser, whereas the relation of landlord and tenant is a continuing one, or whether such damages are not supposed to be within the reasonable contemplation of the parties—whatever be the reason, the fact remains.' "

The English courts also recognize that there is no warranty implied in the sale or lease of real estate. *Hart v. Windsor,* 12 M & W 68, 152 Eng Rep 1114 (1843). The plaintiff sued for rent under a lease, and the defense was that the leased premises were insect infested and uninhabitable. Baron Parke said, "We are all of opinion, for these reasons, that there is no contract, still less a condition, implied by law on the demise of real property only, that it is fit for the purpose for which it is let." Accordingly, judgment was given for the plaintiff.

A discourse entitled "Right of Purchaser in Sale of Defective House," 4 Western Reserve Law Review 357 (1958) accompanies an extensive review of the case law with this observation:

"In the sale of an existing house, new or used, the law is well settled that there are no implied warranties of any type, and recovery on a warranty theory is limited to proof of an express warranty."

■ It will be noticed from the foregoing that even apart from legislation such as ORS 93.140 the law

refuses to imply in favor of the purchaser of an existing house warranties as to quality.  As to purchasers of that kind the rule of *caveat emptor* applies and he must reduce his purported warranties to written contractual form if he expects to base an action upon them.  If he neglects to do so, a court is precluded by ORS 93.140 from summoning to his avail implied warranties.

The plaintiff's assignment of error can not be sustained.

The challenged judgment is affirmed.