WEEKS *v.* SLAVIK BUILDERS, INC.

1. CONTRACTS—SALES—QUESTION OF FACT—WARRANTY.

The liability of a defendant builder who installed a roof on an express warranty clearly made by the manufacturer of the roof was a question for the jury where there were issues as to the position of the defendant-builder as a co-signer of the express warranty, the contents of statements made by the defendant's agents to the plaintiff buyers regarding the express warranty of the roof, and the stock ownership of the roofing corporation by the defendant.

2. CONTRACTS—SALES—HOUSES—IMPLIED WARRANTY.

An implied warranty of fitness extends to the purchase of a new family dwelling house, whether the house is purchased before construction, during construction, or after the dwelling has been constructed, but is still unoccupied; the doctrine of *caveat emptor* is no longer applicable to new family dwelling houses.

3. LIMITATION OF ACTIONS—BREACH OF WARRANTY.

The statute of limitations for breach of warranty by furnishing a defective product begins to run when the plaintiffs have had a reasonable time to determine that repairs will not correct the defect, not when the defect was first discovered.

4. LIMITATION OF ACTIONS—IMPLIED WARRANTY—ROOF.

The plaintiffs, buyers of a new home, commenced their action for breach of implied warranty of a leaking roof within the statutory time period, although more than six years after the first leak in the roof occurred, where the action was commenced within a reasonable time after it was determined that repairs would not correct the leaking roof (MCLA § 600.4833).

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 13 Am Jur 2d, Building and Construction Contracts §§ 27, 28.
[2] 13 Am Jur 2d, Building and Construction Contracts §§ 27, 28.
    55 Am Jur, Vendor and Purchaser § 368.
[3, 4] 13 Am Jur 2d, Building and Construction Contracts § 114.
    51 Am Jur 2d, Limitation of Actions § 134.

Appeal from Washtenaw, William F. Ager, Jr., J. Submitted Division 2 April 7, 1970, at Lansing. (Docket No. 7,406.) Decided June 24, 1970. Affirmed on application for leave to appeal November 27, 1970. 384 Mich 257.

Complaint by Robert P. Weeks and Frances W. Weeks against Slavik Builders, Inc., for breach of express and implied warranties and misrepresentation. Judgment for plaintiffs. Defendant appeals. Affirmed.

*Erwin A. Salisbury,* for plaintiffs.

*Dobson, Griffin & Barense,* for defendant.

Before: McGregor, P. J., and Danhof and Larnard,* JJ.

Larnard, J. The appellees filed an action for breach of express warranty, breach of implied warranty of fitness for purpose and for misrepresentation against appellant from whom they had purchased a new home. This action for damages was heard by the Washtenaw circuit court and jury and judgment was given for appellees in the amount of $3,500. Appellant's motions for new trial and for judgment notwithstanding the verdict were denied and this appeal has been taken from the judgment and denial of post-trial motions.

In August of 1959, appellees entered into a sales agreement with appellant for the purchase of a new home in Ann Arbor, Michigan, which was to be constructed by the appellant. One of the pertinent features of construction to be included in the home was a cement tile roof which was supplied by Anza Industries of America, Inc., and carried a warranty

---

* Circuit judge, sitting on the Court of Appeals by assignment.

against leaks due to failure of the tile or its installation for the life of the building. The brochures used by appellant in promoting the sales of its homes contained a description of the lifetime roof.

Shortly after appellees had taken possession of the home, the first rainstorm occurred and the roof leaked causing damage to the ceilings of the house. Numerous attempts to cure the leaking roof by appellant apparently failed to stop the leakage with the further result that paint will not adhere to the ceiling where the wetness occurred.

Appellant claims that the trial court erred in denying its motion for directed verdict. The motion for directed verdict is based primarily on three theories.

The first theory relied upon by appellant is that the written express lifetime warranty of the roof was made solely by the manufacturers of the roof, to-wit: Anza Industries of America, Inc., and not by appellant. The written warranty covering the tile roof was admitted as plaintiffs' exhibit 3, and contains a brief statement describing the extent of the warranty. The express warranty covering the tile roof appears to be clearly that of Anza Industries of America, Inc., and not that of appellant. The fact that appellant's name also appears on the face of the warranty does not alter the import of the entire document as being that of Anza and not of appellant. There were, however, certain factual questions presented by appellees at trial, including appellant's position as a co-signer of the express warranty, statements made by appellant's agents to appellees regarding the existence of the express warranty on the roof, and questions regarding stock ownership of Anza Industries by appellant, sufficient to allow the question of the existence of an express warranty by the defendant to go to the jury rather

than requiring a directed verdict at the close of the proofs by appellant and appellees.

The second theory upon which appellant bases its claim of error for denial of its motion for directed verdict is that the doctrine of implied warranty is not applicable to the sale of real property. The precise issue raised by this case, as to whether the doctrine of *caveat emptor* continues to apply to the purchase of real property, has not before been presented to a Michigan appellate court and comes before us as a matter of first impression. It therefore becomes incumbent upon us to not only review the trend and status of the law in other jurisdictions, but to carefully consider the basic underlying logic and equities presented by this question.

The substitution of the doctrine of implied warranty of fitness for that of *caveat emptor* in the field of personal property has been firmly imbedded in our jurisprudence since the Uniform Sales Act and the recent adoption of the Uniform Commercial Code. Until recently, however, the doctrine of *caveat emptor* has continued to be almost universally applied to the sale of real property, see 78 ALR2d 446 (Annotation). However, in the past ten years, eight states have moved away from the theory of *caveat emptor* and have adopted some form of implied warranty in the sale of new family dwelling houses. See *Wawak* v. *Stewart* (1970), — Ark — (449 SW2d 922); *Carpenter* v. *Donohoe* (1964), 154 Colo 78 (388 P2d 399); *Bethlahmy* v. *Bechtel* (1966), 91 Idaho 55 (415 P2d 698); *Schipper* v. *Levitt & Sons* (1965), 44 NJ 70 (207 A2d 314); *Waggoner* v. *Midwestern Development, Inc.* (1967), 83 SD 57 (154 NW2d 803); *Humber* v. *Morton* (Tex 1968), 426 SW 2d 554; *Rothberg* v. *Olenik* (1970), — Vt — (262 A2d 461); *House* v. *Thornton* (1969), 76 Wash 2d 428 (457 P2d 199). The states who have joined the vanguard

in interring the ancient doctrine have recognized that in many cases, especially where there are large developments involved, the individual buyer is not on an equal footing and is not in a position to bargain at arm's length with the builder-vendor. The individual purchaser of a newly constructed home is no more able or competent to inspect for latent defects or to protect himself than is the buyer of a mass-produced automobile.

Beginning in 1952, a host of law review articles predicted the trend which the law was bound to take in doing away with the illogical distinctions between purchasers of personal property and the purchasers of new residential real property. See Dunham, Vendor's Obligation as to Fitness of Land for a Particular Purpose, 37 Minn L Rev 108 (1952); Bearman, Caveat Emptor in Sales of Realty—Recent Assaults upon the Rule, 14 Vanderbilt L Rev 541 (1961); Haskell, The Case for an Implied Warranty of Quality in Sales of Real Property, 53 Georgetown L Jour 633 (1965); Robert, The Case of the Unwary Home Buyer; The Housing Merchant Did It, 52 Cornell L Q 835 (1967).

As suggested in the 1963 edition of Williston regarding the recent trend:

"It would be much better if this enlightened approach were generally adopted with respect to the sale of new houses for it would tend to discourage much of the sloppy work and jerry-building that has become perceptible over the years." 7 Williston, Contracts (3d Ed), § 926 A, p 802.

In the case of *Humber v. Morton* (Tex, 1968), 426 SW2d 554, 561, the Texas Supreme Court held in its decision adopting the doctrine of implied warranty of fitness to sale of a new home that:

"If at one time the rule of caveat emptor had application to the sale of a new house by a vendor-

builder, that time is now past. The decisions and legal writings herein referred to afford numerous examples and situations illustrating the harshness and injustice of the rule when applied to the sale of new houses by a builder-vendor, and we need not repeat them here. Obviously, the ordinary purchaser is not in a position to ascertain when there is a defect in a chimney flue, or vent of a heating apparatus, or whether the plumbing work covered by a concrete slab foundation is faulty.

"The caveat emptor rule as applied to new houses is an anachronism patently out of harmony with modern home buying practices. It does a disservice not only to the ordinary prudent purchaser but to the industry itself by lending encouragement to the unscrupulous, fly-by-night operator and purveyor of shoddy work."

The reasoning set forth in the opinion of the New Jersey Supreme Court in *Schipper* v. *Levitt & Sons* (1965), 44 NJ 70, 91 (207 A2d 314, 325, 326), although involving a personal injury, captures the underlying rationale of the trend toward adopting a doctrine of implied warranty of fitness of purpose to the purchase of a new home by stating that:

"When a vendee buys a development house from an advertised model, as in a Levitt or in a comparable project, he clearly relies on the skill of the developer and on its implied representation that the house will be erected in reasonably workmanlike manner and will be reasonably fit for habitation. He has no architect or other professional adviser of his own, he has no real competency to inspect on his own, his actual examination is, in the nature of things, largely superficial, and his opportunity for obtaining meaningful protective changes in the conveyancing documents prepared by the builder vendor is negligible. If there is improper construction such as defective heating system or a defective ceiling, stairway and the like, the well-being of the

vendee and others is endangered and serious injury is foreseeable. The public interest dictates that if such injury does result from defective construction, its cost should be borne by the responsible developer who created the danger and who is in the better economic position to bear the loss rather than by the injured party who justifiably relied on the developer's skill and implied representation."

This Court is aware of the potential argument that an innovation such as this should be left to the Legislature, but we find the doctrine of *caveat emptor* to be a common law court-imposed doctrine and not that of the Legislature. In a case involving a similar fact situation, a court reasoned that:

"As might be expected, we have been presented with the timeworn, threadbare argument that a court is legislating whenever it modifies common-law rules to achieve justice in the light of modern economic and technological advances. That same argument was doubtless made in a famous case that parallels this one: *MacPherson* v. *Buick Motor Co.* (1916), 217 NY 382 (111 NE 1050). There the court, with respect to the sale of automobiles, abolished a requirement of privity of contract that was just as firmly embedded in the common law as is the rule that we are now re-examining. Yet the doctrine of the *MacPherson* case is now accepted as commonplace throughout the nation. We have no doubt that the modification of the rule of caveat emptor that we are now considering will be accepted with like unanimity within a few years." *Wawak* v. *Stewart* (1970), — Ark — (449 SW2d 922, 925).

Our decision today on the issue of implied warranty of fitness is necessarily limited to the facts of this case and is therefore extended only to the purchase of new residential dwelling houses, whether they are purchased prior to construction, during

construction, or are purchased after the dwelling has been constructed but is yet unoccupied.

In *Carpenter* v. *Donohoe* (1964), 154 Colo 78 (388 P2d 399), that court said:

"That a different rule should apply to the purchaser of a house which is near completion than would apply to one who purchases a new house seems incongruous. To say that the former may rely on an implied warranty and the latter cannot is recognizing a distinction without a reasonable basis for it, see Bearman, Caveat Emptor in Sales of Realty—Recent Assaults Upon the Rule (1960), 14 Vanderbilt L Rev 541.

Our extension of an implied warranty of fitness for purpose intended to new residential dwelling houses is in no way affected by MCLA § 565.5 (Stat Ann 1970 Rev § 26.524) upon which appellant relies, since appellees have not alleged that the implied warranty arises from the conveyance of real estate, but from the sales agreement entered into between the appellees and appellant. Such executory contracts are specifically excluded from the definition of "conveyance" by MCLA § 565.35 (Stat Ann 1970 Rev § 26.552), thereby rendering the import of MCLA § 565.5 (Stat Ann 1970 Rev § 26.524) inapplicable to the particular facts of this case.

Appellant's third basis for alleging error in the denial of its motion for directed verdict is that the six-year statute of limitations for actions to recover damages for breach of contract which runs from the date the claim first accrues as provided in MCLA § 600.5833 (Stat Ann 1962 Rev § 27A.5833), bars appellees' claim which was initiated more than six years after the first leak in the roof occurred.

We find that this position is not in accord with the Michigan rule as to when actions accrue for breach of warranty. In *Felt* v. *Reynolds Rotary Fruit*

*Evaporating Company* (1884), 52 Mich 602, our Supreme Court, in a case involving a newly purchased evaporating machine, held that a cause of action did not accrue until after the parties had a reasonable opportunity to determine whether the machine could fulfil the conditions of the warranty. The case of *Heath* v. *Moncrieff Furnace Co.* (1931), 200 NC 377 (156 SE 920, 75 ALR 1082), applied the doctrine of *Felt* v. *Reynolds* to facts more analogous to those here presented. In that case, involving an action for breach of warranty on a furnace installed in an apartment building, it was held that the statute of limitations did not begin running until the date at which, after attempts to remedy defects in the furnace had failed, it was finally determined that it would not satisfy the terms of the warranty. In the annotation following the case (75 ALR 1086, 1087), it is said, citing *Felt* v. *Reynolds* and like decisions:

"According to the weight of authority it seems that the statute of limitations is tolled so long as the vendor insists that the defects in the article sold can be repaired and is attempting to do so."

In a similar case involving a leaking roof, a court held that a cause of action for breach of warranty involving roofing materials accrued when the true condition of the roofing was discovered by the plaintiff, and the court intimated that this did not necessarily mean the date that the roof first began to leak, *Cunningham* v. *Frontier Lumber Co.* (Tex Civ, 1922), 245 SW 270.

We therefore find that the appellees commenced their action within a reasonable time after it was determined that repairs would not correct the leaking roof and that the commencement of the action was therefore well within the statutory time period.

Appellant complains of the excessive amount of damages awarded; of the trial court's permitting appellees to show evidence of appellant's stock ownership in Anza Industries of America, Inc.; and of the trial court's refusal to admit appellant's exhibit 5. The record shows however, that there is substantial evidence to support the findings on damages, and as to the second and third points, the trial court properly exercised its discretion as to the admission and exclusion of evidence.

Affirmed. Costs to appellees.

All concurred.