Argued July 11, reversed and remanded September 6, 1974

YEPSEN ET UX, *Appellants, v.* BURGESS ET UX,
*Respondents.*

525 P2d 1019

*Charles J. McClure,* Tigard, argued the cause and filed a brief for appellants.

No appearance by respondents.

O'CONNELL C. J.

Plaintiffs, purchasers of a new house built and sold to them by defendants, bring this action to recover damages allegedly incurred as the result of defendants' breach of an implied warranty that the structure had been built in a proper and reasonably workmanlike manner and was fit for habitation. The trial court sustained defendants' demurrer to the complaint and plaintiffs appeal.

According to plaintiffs' complaint, defendant Sylvester Burgess is a "builder engaged in the occupation of building new homes." It is alleged that on or about May 8, 1972, defendants sold to plaintiffs certain land and a new home, which had been built by defendant Sylvester Burgess on the land described. It is further alleged that two of the septic tank drain field lines were defectively located and installed so that when the owner of the adjoining lot graded an area for a driveway he severed one of the lines, causing sewage from plaintiffs' septic tank to flow onto and collect on the adjoining lot as a result of which plaintiffs were required to acquire an easement in the adjoining lot and to construct a new drain field.

On appeal plaintiffs concede that in order for

them to prevail this court must overrule *Steiber v. Palumbo,* 219 Or 479, 347 P2d 978, 78 ALR2d 440 (1959), in which it was held that no implied warranties exist in sales of real property. This decision was based on dual grounds: (1) that ORS 93.140, providing that "No covenant shall be implied in any conveyance of real estate, whether it contains special covenants or not," constituted a legislative proscription against implying a covenant of fitness for inhabitability, and (2) that even in the absence of statute, the prevailing case law in other jurisdictions denied recovery on the theory of implied warranty of fitness in the sale of new houses, including those sold by the builder.

With respect to the first ground recited above, we are of the opinion that the court misinterpreted ORS 93.850 in *Steiber.* It is to be noted that the statute refers to "covenants," a term which when used in connection with the conveyance of land ordinarily refers to the quality of title, such as the modern covenants of warranty, quiet enjoyment, seisin and against encumbrances, or the ancient covenants of right to convey and for further assurance.[1] At the time ORS 93.140 and comparable statutes in other states were adopted, the extent to which various covenants of title could be implied in the transfer of land was a matter of some confusion. It is reasonable to regard these statutes as a legislative effort to clarify the law in this respect.

Other jurisdictions having statutes similar to ORS 93.140 have reached the same result, although on somewhat different reasoning. Thus in *Weeks v. Slavick Builders, Inc.,* 24 Mich App 621, 180 NW2d 503, 507,

---

[1] See, e.g., 3 American Law of Property, §§ 12.124-12.130, 454-469 (1952).

aff'd., 384 Mich 257, 181 NW2d 271 (1970), the court said:

"Our extension of an implied warranty of fitness for purpose intended to new residential dwelling houses is in no way affected by M.C.L.A. § 565.5 (Stat. Ann. 1970 Rev. § 26.524) upon which appellant relies, since appellees have not alleged that the implied warranty arises from the conveyance of real estate, but from the sales agreement entered into between the appellees and appellant. Such executory contracts are specifically excluded from the definition of 'conveyance' by M.C.L.A. § 565.35 (Stat. Ann. 1970 Rev. § 26.552), thereby rendering the import of M.C.L.A. § 565.5 (Stat. Ann. 1970 Rev. § 26.524) inapplicable to the particular facts of this case."[2]

■ The 1973 amendment to ORS 93.140 (made after the conveyance in the present case) adds support to our interpretation of the statute. The statute now reads as follows (the amended language in italics):

"No covenant shall be implied in any conveyance of real estate, whether it contains special covenants or not, *except as provided by ORS 93.850 to 93.870.*"

ORS 93.850 to 93.870 set forth various statutory forms of conveyances and provide that certain forms of these statutory deeds are deemed to have the effect of including the covenants of title designated in the statute. From this it appears that the legislature intended ORS 93.140 to regulate covenants of title and not covenants in general.

[2] Similar reasoning was employed by the courts of California and Texas. *See* Pollard v. Saxe & Yolles Development Co., 108 Cal Rptr 174, 32 Cal App 3d 390 (1973); Humber v. Morton, 426 SW 2d 554, 25 ALR3d 372 (Tex 1968). In addition, some states with statutes similar to ORS 93.140 have recognized an implied covenant of fitness for habitation upon the sale of a new home by the builder-seller, without mentioning the statute. Bethlahmy v. Bechtel, 91 Idaho 55, 415 P2d 698 (1966); Waggoner v. Midwestern Development, Inc., 83 S D 57, 154 NW2d 803 (1967).

■ Finding no statutory impediment to the recognition of implied covenants other than covenants of title, we turn to a re-examination of the cases refusing to recognize an implied covenant of fitness for habitation upon the sale of a dwelling house.

*Steiber v. Palumbo,* 219 Or 479, 347 P2d 978, 78 ALR2d 440 (1959), and the cases upon which it relied, denied recovery to the purchaser on the ground that the principle of *caveat emptor* applied in the sale of real property, including structures regarded as a part of the land. Since the date of decision in the *Steiber* case at least 14 states have cast aside the principle of *caveat emptor* in the sale of new houses by the builder-vendor and have recognized an implied warranty of workmanlike construction and habitability.[9] These cases, reflecting a change in the morals of the market

---

[9] Cochran v. Keeton, 287 Ala 439, 252 So2d 313 (1971); Wawak v. Stewart, 247 Ark 1093, 449 SW2d 922 (1970); Pollard v. Saxe & Yolles Development Co., 108 Cal Rptr 174 (Cal App 1973); Carpenter v. Donohoe, 154 Colo 78, 388 P2d 399 (1964); Vernali v. Centrella, 28 Conn Supp 476, 266 A2d 200 (1970); Gable v. Silver, 258 So2d 11, 50 ALR3d 1062 (Fla 1972); Bethlahmy v. Bechtel, 91 Idaho 55, 415 P2d 698 (1966); Hanavan v. Dye, 4 Ill App3d 576, 281 NE2d 398 (1972); Theis v. Heuer, 280 NE2d 300 (Ind 1972); Weeks v. Slavick Builders, Inc., 24 Mich App 621, 180 NW2d 503, aff'd., 384 Mich 257, 181 NW2d 271 (1970); Smith v. Old Warson Development Co., 479 SW2d 795 (Mo 1972); Schipper v. Levitt & Sons, Inc., 44 N J 70, 207 A2d 314 (1965); Padula v. J.J. Deb-Cin Homes, Inc., 298 A2d 529 (R I 1973); Rutledge v. Dodenhoff, 254 S C 407, 175 SE2d 792 (1970); Waggoner v. Midwestern Development, Inc., 83 S D 57, 154 NW2d 803 (1967); Humber v. Morton, 426 SW2d 554, 25 ALR3d 372 (Tex 1968); Rothberg v. Olenik, 128 Vt 295, 262 A2d 461 (1970); House v. Thornton, 76 Wash2d 428, 457 P2d 199 (1969).

For an indication of the extent of change which has occurred in the past decade and a half, *compare* Annot.: Implied Warranty by Seller, in Absence of Fraud or Misrepresentation, as to Fitness, Condition, or Quality of New Dwelling, 78 ALR2d 446 (1961) *with* Annot.: Liability of Builder-Vendor or Other Vendor of New Dwelling for Loss, Injury or Damage Occasioned by Defective

place, more specifically rest their holdings on the ground that the underlying theory of *caveat emptor,* predicating an arm's length transaction between seller and buyer of comparable skill and experience, is unrealistic as applied to the sale of new houses. The courts of this persuasion recognize that the essence of the transaction is an implicit engagement upon the part of the seller to transfer a house suitable for habitation. It is also recognized that the purchaser is not in an equal bargaining position with the builder-seller of a new house and is forced to rely upon the latter's skill and knowledge with respect to the ingredients of an adequately constructed dwelling house. It is further explained that, although a house becomes a part of the realty according to the technical law of accession, the purchaser sees the transaction primarily as the purchase of a house with the land only as an incident thereto. Looked at in this light, there is no substantial difference between the sale of a house and the sale of goods and it follows, therefore, that the implied warranties of fitness for use attendant upon a sale of personal property should attach to a sale of a house.

■ The foregoing reasoning, which we regard as sound, compels us to overrule *Steiber v. Palumbo, supra,* and to join the ranks of those courts recognizing an implied warranty of fitness in the sale of new dwelling houses. Our holding limits the implication of such a warranty to those cases where the seller is a builder-vendor, i.e., one who builds new houses upon land for

Condition Thereof, § 6, 25 ALR3d 383, 413-415 (1969), Supp. 1973, 9-10.

In addition, some courts have adopted the so-called English rule that an implied warranty of reasonable workmanship arises when the sales transaction occurs during the course of construction. *See,* Annot.: 25 ALR3d, supra § 6[b], 415-419 (1969).

the purpose of sale to the general public.[4] This rule is applicable only to the sale of new houses. The sale under such circumstances is deemed to carry with it a warranty that the house is constructed in a reasonably workmanlike manner and is fit for habitation. A more precise definition of the scope of this warranty must await delineation on a case by case basis.[5] Similarly, resolution of problems concerning the commencement of the running of the statute of limitations,[6] and the possible extension of the doctrine to include industrial as well as residential structures,[7] or non-privity as well as first party purchasers must be postponed until we have the benefit of briefs and argument on these issues.

In the present case the complaint alleges the sale of a new house by a builder-vendor. It further alleges that the house "was not erected in a proper and reasonably workmanlike manner as impliedly represented and warranted by defendants." The defects are more specifically described as the improper construction of the septic tank and drain field system. Although these defects do not constitute inadequate workmanship in the construction of the dwelling structure itself, they

---

[4] *Cf.,* Elderkin v. Gaster, 447 Pa 118, 123, 288 A2d 771, 774, fn. 10 (1972).

[5] Mulhern v. Hederich, 163 Colo 275, 430 P2d 469 (1967); Elderkin v. Gaster, supra 288 A2d at 776, fn. 13. See Note, 47 Temple L Q 172 (1973).

[6] Note, Contracts-Sales-Houses—An implied warranty of fitness extends to the purchase of new residential housing. Rule of *caveat emptor* no longer applies, 49 J Urban Law 195, 199 (1971); Comment, Real Property-Implied Warranties-Sale of House by Builder-Vendor Creates an Implied Warranty of Fitness and Habitability, 24 Ala L Rev 332, 338-339 (1972).

[7] *Cf.,* Robertson Lumber Co. v. Stephen Farmers Co-op Elev. Co., 274 Minn 17, 143 NW2d 622 (1966). Note, Products Liability-Implied Warranty in the Sale of a New House, 38 Mo L Rev 315, 319-320 (1973); 24 Ala L Rev, *supra* note 6, 338-339.

are the product of the builder's work upon the land in conjunction with the construction and sale of the structure. Moreover, the septic tank and drainage system are so essential to the use of the house that for warranty purposes their proper installation may be deemed a part of the structure sold. The use of the house is so dependent upon the proper disposition of waste through a properly operating septic tank and drain field system that the house would not be habitable without them.

The judgment of the trial court is reversed and the cause is remanded for further proceedings.