DOWNEY, Judge.
Appellants, Faye Y. Hurley and Raymond S. Hurley, seek review of a final judgment which found them ultimately liable for damages for breach of implied warranty arising out of the sale of subdivision lots that had been improved with a seawall. Carriage Hill Limited Partnership filed a “cross-appeal,” which in reality is a joinder in appeal, seeking review of the same final judgment which found Carriage Hill immediately liable for breach of implied warranty.
The record reflects that appellee Carriage Hill Limited Partnership was the developer of a subdivision in Boca Raton, Florida. During the course of development, in July 1972, Carriage Hill employed P and H Seawall & Piling Co. to construct 7100 lineal feet of seawall abutting the lots in question in this case. In January 1974 the seawall collapsed during a period of heavy rainfall.
In 1971 and 1972 Carriage Hill entered into contracts for the sale of the lots involved in this suit. All of those contracts, except one, were assigned to third parties so that only one ultimate purchaser who received a deed to the property was the original contract purchaser. When the contracts from Carriage Hill were assigned, the assignee also entered into a new contract with the assignor. However, when the sale was closed a deed was delivered by Carriage Hill to the ultimate assignee and legal title passed from the former to the latter without intervening transfers. The consequence *149 is that plaintiff-appellees were in privity with Carriage Hill and had standing to enforce any implied warranty evolving out of the contracts and sales.
After the seawall collapsed, the five ap-pellees who had taken title to lots filed actions against Carriage Hill for breach of an implied warranty of fitness. In turn, Carriage Hill brought in Mr. and Mrs. Hurley as third party defendants in a claim for indemnity for any damages Carriage Hill might have to pay as a result of the actions against it. In an extensive, well considered judgment, the trial court found that there was an implied warranty of fitness, which had been breached, and that the warranty extended to appellees. The court further found that Carriage Hill was entitled to be indemnified by appellants because of the manner in which appellant Raymond Hurley operated P & H Seawall & Piling Company.
Although there are numerous questions presented by this appeal, the main ones involve the validity of the trial judge’s findings that there was an implied warranty involved in the sale of the property in question and that it extended to the appellee-vendees in this ease.
By way of background, we note that at common law the doctrine of caveat emptor applied to the sale of both real and personal property. Eventually that doctrine was abandoned with regard to the sale of chattels, but it has retained its vitality generally with regard to the sale of realty. Some inroads, however, have been made in the area of real property by the application of covenants of implied warranty to the sale of new residences.
The seminal case in Florida applying implied warranties to the sale of new residential real estate is Gable v. Silver, 258 So.2d 11 (Fla. 4th DCA 1972), affirmed 264 So.2d 418 (Fla.1972). The Gable case noted that the general rule still pertaining in a majority of jurisdictions is that implied warranties do not apply to the sale of realty. However, recognizing that the rule was fast being eroded in the area of new residential construction, the court held the “modern rule” to be that implied warranties do extend to the sale of residences. The rationale of the modern view seems to be that caveat emptor should no longer be applied to the sale of new residential realty because that doctrine does not satisfy the demands of justice in such cases. The reasons are set forth in Cook v. Salishan Properties, Inc., 279 Or. 333, 569 P.2d 1033, 1034-1035 (1977), as follows:
In Yepsen [v. Burgess, 269 Or. 635, 525 P.2d 1019 (1974) ] we noted and followed a trend in other jurisdictions toward the recognition of an implied warranty in the sale of new houses, and summarized the justifications for that recognition as follows:
‘ * * * These cases, reflecting a change in the morals of the market place, more specifically rest their holdings on the ground that the underlying theory of caveat emptor, predicating an arm’s length transaction between seller and buyer of comparable skill and experience, is unrealistic as applied to the sale of new houses. The courts of this persuasion recognize that the essence of the transaction is an implicit engagement upon the part of the seller to transfer a house suitable for habitation. It is also recognized that the purchaser is not in an equal bargaining position with the builder-seller of a new house and is forced to rely upon the latter’s skill and knowledge with respect to the ingredients of an adequately constructed dwelling house. It is further explained that, although a house becomes a part of the realty according to the technical law of accession, the purchaser sees the transaction primarily as the purchase of a house with the land only as an incident thereto. Looked at in this light, there is no substantial difference between the sale of a house and the sale of goods and it follows, therefore, that the implied warranties of fitness for use attendant upon a sale of personal property should attach to a sale of a house.’ 269 Or. at 639-40, 525 P.2d at 1022.
*150 These justifications, which we found persuasive in the aggregate in Yepsen, are of two types: a recognition of consumer expectation on the one hand and, on the other, an acknowledgment that buyers of houses, like buyers of other goods, must of necessity rely on the expertise of the builder or manufacturer.
Gable concluded by limiting its purview in stating: “we also realize and memorialize that our facts limit our decisions to the sale of new homes or condominiums.”
Subsequent decisions have failed to extend the modern view of Gable beyond its clear parameters. In Burger v. Hector, 278 So.2d 636 (Fla. 1st DCA 1973), the court refused to extend implied warranties to the builder of a pew house because the water damage to the house was caused not by the builder’s defective workmanship, but by the subsoil condition on the lot purchased separately by the owner.
In Schmitt v. Long, 290 So.2d 139 (Fla. 4th DCA 1974), the purchaser of an unimproved lot, which had been filled by the seller, sued the seller when it was learned the lot could not be improved without being demucked. This court refused to apply the holding in Gable, supra, because the latter case did not involve the sale of unimproved land.
Most recently, this court refused to extend the doctrine of implied warranties to a tenant of a mobile home. Solomon v. Gentry, 388 So.2d 52 (Fla. 4th DCA 1980).
Adverting once again to the case at hand, the real question is whether the rationale which gave rise to the extension of implied warranties to new homes perforce applies to the sale of residential lots on which a seawall has been constructed. There are jurisdictions which have extended implied warranties to improvements outside of but in support of the house, such as wells supplying water to the house. Krol v. York Terrace Building, Inc., 35 Md.App. 321, 370 A.2d 589 (1977); Lyon v. Ward, 28 N.C.App. 446, 221 S.E.2d 727 (1976); Jeanguneat v. Jackie Hames Const. Co., 576 P.2d 761 (Okl.1978). Other courts have extended such warranties to septic tanks and drain fields. Coney v. Stewart, 263 Ark. 148, 562 S.W.2d 619 (1978); Tavares v. Horstman, 542 P.2d 1275 (Wyo.1975); Rutledge v. Dodenhoff, 254 S.C. 407, 175 S.E.2d 792 (1970). The principle involved in these cases seems to be that, although the defects do not appear in the house structure, the builder is responsible for them and they were placed on the lot in conjunction with and to support the house. Yepsen v. Burgess, 269 Or. 635, 525 P.2d 1019 (1974).
After reviewing numerous authorities the trial judge found that Carriage Hill should be held to have impliedly warranted the fitness of the seawall in question here. In so ruling the judgment stated:
Unquestionably, if defects of this severity existed within the walls of a structure above the ground, be it a home or a commercial building, there would be little discussion as to the existence of implied warranties. Though the Court is concerned lest there be an undue extension of a limited concept, it cannot reasonably differentiate between the potential uses of the structure (residence, commercial building or seawall) nor attach critical importance to its location (i.e., whether it abuts or rests atop the land.). If, however, a later court should determine that implied warranty protection must be limited to homes, then, as indicated by the ‘well and septic tank cases’ cited above, the focus is not limited to the residence alone, but extends to those other products of the builder’s work upon the land which are reasonably related to the building of the home. Given the size and locations of lots in this case, one could certainly find that the seawalls were necessary and essential elements for the building of homes. Thus, on either of these parallel theories, viz., that they are structures abutting the land or that they are products of the builder which are reasonably related to the building of a home, the Court concludes that the seawalls are covered by an implied warranty of fitness, *151 which in this instance, was breached by the builder-developer.[1]
This is an interesting analysis of the case and it has a certain logical punch to it. However, we are not persuaded that this court should adopt those arguments for the following reasons: First, the suggestion that an implied warranty of fitness applies to commercial construction has never been followed in this state. Secondly, the suggestion that this seawall is a part of, or in support of, the house improvement as are water wells and septic tanks we feel is a strained extension of the rationale which gave rise to the extension of the doctrine of implied warranty to residential construction. Thirdly, and most importantly, we opt not to follow the lead suggested by the trial court and extend the doctrine of implied warranty indiscriminately to improvements to real property, because it is too radical a departure from the general rule in this country and the jurisprudence of this state. A drastic change in course such as suggested is more appropriate coming from the highest court in the state. Accordingly, we certify to the Supreme Court of Florida the following question as one of great public importance:
Do implied warranties of fitness and merchantability extend to first purchasers of residential real estate for improvements to the land other than construction of a home and other improvements immediately supporting the residence thereon, such as water wells and septic tanks?
Our opinion is not intended to foreclose amendment of the pleadings to allege a cause of action based upon negligent performance of a contract. See, e.g., Drexel Properties, Inc. v. Bay Colony Club Condominium, Inc., 406 So.2d 515 (Fla. 4th DCA 1981.)
For the foregoing reasons we hold the deed holders cannot maintain this suit for breach of implied warranty against Carriage Hill and thus Carriage Hill has no claim over for indemnification from the Hurleys. We, therefore, reverse that portion of the final judgment appealed from in which judgment was entered for damages in favor of Dickinson, Florida Vantage Properties, Lunsford, Conklin, Titus, Fargo Long Corp., and against Carriage Hill Limited Partnership. The award of judgment to Carriage Hill Limited Partnership for $24,687.80 against appellants is also reversed.
HERSEY, J., concurs.
LETTS, C. J., dissents with opinion.

. 49 Fla.Supp. 74, 78-79 (Fla. 15th Cir. Ct. 1978).