SMITH v FOERSTER-BOLSER CONSTRUCTION, INC

Docket No. 257885. Submitted December 13, 2005, at Lansing. Decided
January 17, 2006, at 9:00 a.m.

Larry and Corliss Smith and Allstate Insurance Company brought
an action in the Antrim Circuit Court against Foerster-Bolser
Construction, Inc.; and David Runyan, seeking compensation for
losses following a fire in the new home that Foerster-Bolser was
building for the Smiths on land the Smiths had purchased.
Foerster-Bolser had hired Runyan to do flooring work, and his
workmanship allegedly caused the fire. After the close of the
plaintiffs' proofs and Runyan's settlement and dismissal from the
case, the court, Philip E. Rodgers, Jr., J., granted the plaintiffs a
directed verdict with respect to their claim that Foerster-Bolser
violated an implied warranty of habitability accompanying con-
struction of all new homes. The plaintiffs then withdrew their
remaining claims, and the implied warranty claim was submitted
to the jury for a determination of damages. After the jury awarded
damages to Allstate, Foerster-Bolser appealed.

The Court of Appeals *held*:

1. The trial court erred when it granted a directed verdict on
the plaintiffs' claim regarding the implied warranty of habitability.
The implied warranty of habitability that accompanies the sale of
new homes applies only to the sale of new homes by a builder-
vendor as part of a real estate transaction. In this case, the Smiths
engaged the services of a general contractor to construct a new
home on land they already owned.

2. While Foerster-Bolser raised this argument for the first time
on appeal, consideration of the issue is necessary for a proper
determination of the case and the issue involves a significant
question of law that may be resolved on the facts presented,
enabling the Court of Appeals to consider it despite the lack of
preservation. It would be inequitable, however, to grant Foerster-
Bolser the relief it requested with its unpreserved argument
without also reinstating the claims the plaintiffs withdrew in
reliance on the directed verdict. The plaintiffs' withdrawn claims
are reinstated pursuant to the authority given by MCR
7.216(A)(7).

Reversed and remanded for further proceedings.

CONTRACTS — CONSTRUCTION — NEW HOMES — IMPLIED WARRANTY OF HABITABIL-
ITY.

The implied warranty of habitability recognized in Michigan in
connection with the sale of new homes applies only to the sale of
new homes by a builder-vendor as part of a real estate transac-
tion.

*Grotefeld & Denenberg, L.L.C.* (by *Jeffrey R.
Learned, Alan B. McMaster,* and *Mark S. Grotefeld*), for
Larry Smith, Corliss Smith, and Allstate Insurance
Company.

*Running, Wise & Ford, P.L.C.* (by *Michael I. Conlon*
and *Robert W. Grzech*), for Foerster-Bolser Construc-
tion, Inc.

Before: SMOLENSKI, P.J., and SCHUETTE and BORRELLO,
JJ.

PER CURIAM. In this dispute arising out of a residen-
tial fire allegedly caused by poor workmanship, defen-
dant Foerster-Bolser Construction, Inc. (Foerster-
Bolser), appeals as of right the May 27, 2004, judgment
in favor of plaintiffs. We reverse and remand for further
proceedings.

In 1997, while still residents of Maryland, plaintiffs
Larry Smith and Corliss Smith hired Foerster-Bolser to
construct a new residence on land the Smiths had
purchased in Michigan for their eventual retirement.
Foerster-Bolser gave the Smiths a certificate of occupa-
tion in October 1998. In June 1999, the Smiths retired
and moved into the new home. Although the home was
substantially completed at that time, there were several
tasks that Foerster-Bolser still needed to perform to
finalize the job.

In February 2000, Foerster-Bolser hired defendant David Runyan to redo the Smiths' kitchen floor. Runyan spent the first full day on the job sanding off the kitchen floor's existing finish in preparation for application of the new stain and finish.[1] At the end of the day, Runyan packed up his equipment, but left on the kitchen floor a bag of sawdust potentially coated with urethane. When Runyan returned to complete the job the next morning, he noticed that the home was filled with smoke and called the fire department. Investigations of the fire indicated that it was caused either by an electrical fault in the crawlspace immediately below the area where Runyan left the bag of sawdust or through the spontaneous combustion of the bag of sawdust. Although the fire caused physical damage to the home, there was also extensive smoke damage to the home and its contents.

Plaintiffs eventually filed suit against defendants, claiming they were responsible for the losses incurred as a result of the fire. Plaintiffs sought compensation under various theories, including negligence, breach of contract, and breach of implied warranty.[2] The jury trial commenced in April 2004. After the close of plaintiffs' proofs, Runyan settled with plaintiffs and was dismissed from the case.[3] Thereafter, the trial court granted a directed verdict in favor of plaintiffs with respect to plaintiffs' claim that defendant violated the implied warranty of habitability that accompanies the construction of all new homes. After the trial court

_____

[1] The Smiths were home when Runyan began to work, but elected to spend the night elsewhere while Runyan completed the work.

[2] Plaintiff Allstate Insurance Company sought compensation for the claims it paid to the Smiths, and the Smiths sought compensation for uninsured losses.

[3] Hereinafter, "defendant" will be used to refer to defendant Foerster-Bolser.

granted the directed verdict, plaintiffs withdrew the remainder of their claims, and the claim of implied warranty of habitability was submitted to the jury solely for a determination of damages. The jury awarded $457,000 in damages to Allstate, but determined that the Smiths were not entitled to any compensation.

On appeal, defendant argues the trial court erred when it granted a directed verdict in favor of plaintiffs on their claim for breach of the implied warranty of habitability. Specifically, defendant contends that the implied warranty of habitability only applies to new homes sold as part of a real estate transaction by builder-vendors. We agree.

As a preliminary matter, we note that defendant raised this argument for the first time on appeal. Although this Court need not review issues raised for the first time on appeal, *Herald Co, Inc v Kalamazoo*, 229 Mich App 376, 390; 581 NW2d 295 (1998), this Court may overlook preservation requirements if the failure to consider the issue would result in manifest injustice, if consideration is necessary for a proper determination of the case, or if the issue involves a question of law and the facts necessary for its resolution have been presented, *Steward v Panek*, 251 Mich App 546, 554; 652 NW2d 232 (2002). Because consideration of this issue is necessary for a proper determination of the case and the issue involves a significant question of law, the resolution of which may be determined on the facts presented, we elect to overlook the lack of preservation and consider the issue.

This Court reviews de novo a trial court's decision regarding a party's motion for a directed verdict. *Elezovic v Ford Motor Co*, 472 Mich 408, 418; 697 NW2d 851 (2005). A directed verdict is appropriate only when

no factual question exists on which reasonable jurors could differ. *Diamond v Witherspoon*, 265 Mich App 673, 681; 696 NW2d 770 (2005). This Court will "view the evidence presented up to the time of the motion in the light most favorable to the nonmoving party, granting that party every reasonable inference, and resolving any conflict in the evidence in that party's favor to decide whether a question of fact existed." *Derbabian v S & C Snowplowing, Inc*, 249 Mich App 695, 702; 644 NW2d 779 (2002).

In *Weeks v Slavik Builders, Inc*, 24 Mich App 621; 180 NW2d 503 (1970), aff'd 384 Mich 257 (1970), this Court adopted the implied warranty of habitability for new homes. In *Weeks*, the plaintiffs entered into an agreement to purchase a new home, which was to be built by the defendant. *Id.* at 622. Shortly after the plaintiffs took possession of the new home, the roof leaked, causing damage to the ceilings of the house. *Id.* at 623. The defendant was unable to correct the problem and the plaintiffs eventually sued under the theories of breach of express warranty, breach of implied warranty of fitness for purpose, and misrepresentation. *Id.* at 622-624. On appeal, the defendant argued that the trial court erred by failing to direct a verdict in its favor on the basis that the implied warranty of fitness is not applicable to the sale of real property. *Id.* at 624. The Court noted that the precise issue concerned the continuing applicability of the doctrine of *caveat emptor* to the purchase of real property. *Id.*

In examining the continuing validity of the doctrine, the Court recognized that, although the doctrine of implied warranty of fitness had replaced that of *caveat emptor* in the field of personal property, the doctrine of *caveat emptor* had continued to be almost universally applied to the sale of real property. *Id.* However, the

Court noted that several jurisdictions had moved away from the doctrine of *caveat emptor* and adopted some form of implied warranty in the sale of new homes. The Court explained that these jurisdictions "have recognized that in many cases, especially where there are large developments involved, the individual buyer is not on an equal footing and is not in a position to bargain at arm's length with the builder-vendor." *Id.* at 625. Furthermore, the Court continued, the "individual purchaser of a newly constructed home is no more able or competent to inspect for latent defects or to protect himself than is the buyer of a mass-produced automobile." *Id.* The Court went on to quote approvingly the rationale for adopting an implied warranty of habitability stated in *Schipper v Levitt & Sons, Inc*, 44 NJ 70; 207 A2d 314 (1965):

> "When a vendee buys a development house from an advertised model, as in a Levitt or in a comparable project, he clearly relies on the skill of the developer and on its implied representation that the house will be erected in reasonably workmanlike manner and will be reasonably fit for habitation. He has no architect or other professional adviser of his own, he has no real competency to inspect on his own, his actual examination is, in the nature of things, largely superficial, and his opportunity for obtaining meaningful protective changes in the conveyancing documents prepared by the builder vendor is negligible. If there is improper construction such as defective heating system or a defective ceiling, stairway and the like, the well-being of the vendee and others is endangered and serious injury is foreseeable. The public interest dictates that if such injury does result from defective construction, its cost should be borne by the responsible developer who created the danger and who is in the better economic position to bear the loss rather than by the injured party who justifiably relied on the developer's skill and implied representation." [*Weeks, supra* at 626-627, quoting *Schipper, supra* at 91.]

The Court in *Weeks* then concluded by adopting the implied warranty of fitness, but stated that its decision was "necessarily limited to the facts of this case . . . ." *Weeks, supra* at 627-628.

As can be seen, the underlying rationale in *Weeks* for adopting an implied warranty of habitability was to protect new home purchases from the harshness of the *caveat emptor* rule still applicable to real estate transactions. The Court further recognized that most new home buyers would not be in a position to effectively bargain for concessions from the builder-vendor of the home and that the builder-vendor would likely be in a better position to identify and correct latent defects in the new home. While the Court did not specifically state that the implied warranty of habitability applied only to new homes sold as part of a real estate transaction involving the builder-vendor, the underlying rationale and policy cited by the Court, as well as the references to developers and builder-vendors, indicates an intention that the doctrine apply only to builder-vendors.[4] In addition, where, as here, the purchaser of a new home engages the services of a general contractor to construct

---

[4] This is consistent with the application of the implied warranty of habitability in other jurisdictions. See *Albrecht v Clifford*, 436 Mass 706, 710-711; 767 NE2d 42 (2002) (adopting the implied warranty of habitability for the sale of new homes by builder-vendors); *Mobley v Copeland*, 828 SW2d 717, 728 (Mo App, 1992) (noting that Missouri law recognizes an implied warranty of habitability in favor of the first purchaser of a new home from a builder-vendor); *Mazurek v Nielsen*, 42 Colo App 386, 387-388; 599 P2d 269 (1979) (holding that the implied warranty of habitability only runs against builder-sellers, but a seller need not be involved in the physical act of construction to be considered a builder-seller); *Klos v Gockel*, 87 Wash 2d 567, 570; 554 P2d 1349 (1976) (noting that the implied warranty of habitability applies only to vendor-builders who are regularly engaged in building); but see *McClure v Sennstrom*, 267 Ill App 3d 277, 280-281; 642 NE2d 885 (1994) (noting that a builder-vendor is anyone engaged in the commercial business of building houses).

a new home on land already owned, the purchaser is in a better position to safeguard his or her interests. In such cases, the purchaser is able to research and select his or her own general contractor and may procure the services of an architect to oversee the planning and construction. Furthermore, the purchaser can negotiate the terms of the building contract to include express warranties that will protect the purchaser against losses incurred as a result of poor workmanship or the use of substandard materials. Finally, in addition to any contractual remedies, the purchaser is also protected by ordinary negligence principles applicable to the work of contractors.[5] For these reasons, we hold that the implied warranty of habitability that accompanies the sale of new homes applies only to the sale of new homes by a builder-vendor as part of a real estate transaction.[6] Hence, the trial court erred when it granted a directed verdict on plaintiffs' claim regarding the implied warranty of habitability. Consequently, we reverse the trial court's grant of a directed verdict in favor of plaintiffs on that claim.

Having determined that the trial court's grant of a directed verdict should be reversed, we need not address defendant's remaining arguments on appeal. However, we agree with plaintiffs' contention that it would be inequitable to grant defendant the relief it requested with this unpreserved argument without also reinstating the claims plaintiffs withdrew in reliance on the trial court's directed verdict. Therefore, pursuant to

---

[5] See, e.g., *Feaster v Hous*, 137 Mich App 783, 789; 359 NW2d 219 (1984), *Bluemlein v Szepanski*, 101 Mich App 184, 190; 300 NW2d 493 (1980), and *Kapalczynski v Globe Constr Co*, 19 Mich App 396; 172 NW2d 852 (1969). See also 2 Restatement Torts, 2d, § 385, p 293.

[6] Because it is not necessary to the resolution of this case, we leave it to later courts to define the full extent of the term "builder-vendor."

our authority to grant further or different relief as the case may require, MCR 7.216(A)(7), we reinstate plaintiffs' withdrawn claims.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.