*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

CHRISTINA MARIE PENNINGTON, also known as CHRISTINA MARIE JACKSON,

Plaintiff-Appellant,

v

COREY ALAN PENNINGTON,

Defendant-Appellee.

FOR PUBLICATION
September 12, 2019
9:00 a.m.

No. 348090
Ionia Circuit Court
LC No. 2015-031385-DM

Before: GADOLA, P.J., and MARKEY and RONAYNE KRAUSE, JJ.

GADOLA, P.J.

Plaintiff, Christina Marie Pennington, appeals as of right the trial court's order granting defendant, Corey Alan Pennington, sole physical custody of the parties' minor child. We vacate the trial court's orders changing the child's custody and reinstate the trial court's prior custody order.

## I. FACTS

This case arises from defendant's motions to change custody of the parties' minor child. Plaintiff and defendant were married in 2014, and their daughter was born in 2015. The parties divorced in February 2016; the judgment of divorce granted the parties joint legal custody and granted plaintiff primary physical custody of the child. Defendant was granted parenting time with the child, but because the child was an infant, was still nursing, and had recently undergone surgery for hip dysplasia, the trial court ordered that defendant's parenting time be supervised. The judgment of divorce also ordered defendant to complete parenting classes.

In April 2017, plaintiff moved to hold defendant in contempt, alleging that he had not completed parenting classes and was being uncooperative during the supervised visits. In July 2017, the trial court ordered defendant to complete parenting classes and further ordered that defendant's visits with the child be supervised by the Friend of the Court. The trial court also held defendant in contempt for failing to pay medical expenses related to the birth of the child.

-1-

On January 2, 2018, the trial court entered an order reflecting an amended parenting time schedule agreed to by the parties in which defendant was granted unsupervised parenting time with the child every other weekend. After the order was entered, however, plaintiff allegedly failed to bring the child to the exchange point for defendant's parenting time. Defendant filed a motion to show cause. At the hearing on the motion, plaintiff informed the trial court that she was concerned regarding defendant's care of the child. The trial court ordered plaintiff to comply with the parenting time order or be held in contempt, and further ordered that if plaintiff were held in contempt for failing to comply with the order she would be required to serve one day in jail for every day defendant was deprived of parenting time.

On or about January 29, 2018, plaintiff took the child to her pediatrician, fearful that the child had been physically and/or sexually abused. Plaintiff later testified that the child had vaginal redness and irritation, and had stated "daddy hurt me." The pediatrician reported the information to Child Protective Services (CPS); CPS and law enforcement jointly arranged for a child sexual abuse medical examination of the child.

On March 2, 2018, defendant moved for a change of custody, requesting sole physical custody of the child. Defendant alleged that circumstances had changed because plaintiff was unwilling to support a relationship between him and the child, causing him concern regarding plaintiff's mental health. At the hearing on the motion before the trial court referee, a CPS investigator testified that the allegations of abuse had not been substantiated. She further testified that she became concerned about plaintiff's emotional stability and mental health when plaintiff refused to accept that the allegations of abuse were not substantiated by evidence. The CPS investigator further testified that in her opinion "unnecessary medical treatment was found to have been going on." However, no medical expert was called to testify regarding either the results of the child's medical examination, plaintiff's mental health, or whether the medical treatment sought was unnecessary.[1]

In response to the testimony of the CPS investigator, plaintiff testified that her past concerns regarding the child's health related to the child's previous surgery for hip dysplasia and weight loss that the child experienced when recuperating from the surgery. She also testified that the child had certain food allergies that caused her to consult her pediatrician and an allergist. Plaintiff confirmed that she had taken the child for an examination by the child's pediatrician when the child reported that defendant had hurt her, but testified that she had not contacted CPS with allegations against defendant; rather, the child's pediatrician had reported to CPS. Plaintiff also testified that the child had been seeing a therapist every week for the two months preceding the hearing because the child had been having some problematic behavior. Plaintiff testified that she also sees a therapist and that she takes medication for anxiety because she had experienced anxiety at work and sometimes had trouble falling asleep.

At the conclusion of the hearing, the trial court referee stated on the record that the testimony of the CPS investigator together with the medical report supported the finding that

---

[1] The trial court referee apparently was provided with a medical report regarding the child's examination. The report has not been made part of the trial court record, however.

there had been a change of circumstances since the last custody order. The referee also found on the record that the established custodial environment at that time was primarily with plaintiff, and that defendant's motion requested a modification of the established custodial environment, such that the "higher" burden of proof applied. The referee recommended that plaintiff undergo a psychological evaluation and that the parties temporarily have joint physical custody, with plaintiff having custody Monday through Friday, and defendant having custody every weekend, and also summer parenting time. The referee further stated that permanent custody would be evaluated after plaintiff underwent the psychological evaluation.

By order entered March 27, 2018, the trial court adopted the recommendation of the referee as an interim order. The order stated that sufficient evidence had been introduced to prove proper cause and a change of circumstances. The order also stated that an established custodial environment for the child existed primarily with plaintiff, "and to a lesser extent with father at this time." The order indicated that it was a temporary order until plaintiff underwent a psychological evaluation, and pending review and recommendation by the Friend of the Court.

On July 18, 2018, defendant filed a motion to show cause, alleging that plaintiff refused to agree to schedule his summer parenting time in accordance with the March 2018 order. A hearing was held August 14, 2018, before the trial court referee on the motion to show cause, at the conclusion of which the referee found plaintiff to be in contempt of court for failing to permit defendant to exercise his parenting time with the child as ordered in the March 2018 order. The referee recommended that plaintiff be ordered to serve 30 days in jail; the trial court adopted the recommendation of the referee.

Meanwhile, also on August 14, 2018, defendant filed another motion seeking to change custody and again requesting that the trial court award him physical custody of the child. At the hearing held before the trial court's referee, defendant testified that he was requesting primary physical custody of the child, with plaintiff having alternate weekends for parenting time, and asking that plaintiff be ordered to pay child support if he were awarded custody. He admitted that he was delinquent in paying the ordered child support in the approximate amount of $2,200.

At the hearing on defendant's second motion to change custody, the child's therapist testified that during several counseling sessions with the child, the child exhibited inappropriate boundaries during play; specifically, the child repeatedly took the clothes off the male doll and put it on a couch or a bed to "snuggle." The therapist testified that this expressed an inappropriate boundary between a small child and an adult male, though not necessarily defendant. The therapist recommended that both parents undergo psychological evaluation for the purposes of comparing the mental health of both parties before any change in custody occurred. Plaintiff testified that she completed the psychological evaluation, which showed that she suffered from anxiety and depression. Plaintiff opined that those issues were being adequately controlled by her medication.

After the hearing, the referee recommended that defendant be awarded physical custody of the child, and plaintiff be permitted parenting time on alternate weekends. The trial court adopted the recommendation of the referee, finding that an established custodial environment existed with both parties, and that defendant had proven by a preponderance of the evidence that a custody change was in the best interests of the child. The trial court considered the best-

interest factors set forth in the Child Custody Act and found that all factors either favored defendant or were equal with respect to both parties.

Plaintiff filed objections to the referee's recommendations and requested de novo review by the trial court. At the conclusion of the de novo hearing, the trial court entered an order affirming the award of physical custody to defendant. Plaintiff now appeals.

## II. DISCUSSION

### A. STANDARD OF REVIEW

In a child custody dispute, "all orders and judgments of the circuit court shall be affirmed on appeal unless the trial judge made findings of fact against the great weight of evidence or committed a palpable abuse of discretion or a clear legal error on a major issue." MCL 722.28. Specifically, we review the trial court's determination whether a party demonstrated proper cause or a change of circumstances under the great weight of the evidence standard. *Corporan v Henton*, 282 Mich App 599, 605; 766 NW2d 903 (2009). A finding of fact is against the great weight of the evidence if the evidence clearly preponderates in the opposite direction. *McIntosh v McIntosh*, 282 Mich App 471, 474; 768 NW2d 325 (2009). In addition, "[a] trial court's findings regarding the existence of an established custodial environment and regarding each custody factor should be affirmed unless the evidence clearly preponderates in the opposite direction. An abuse of discretion standard applies to the trial court's discretionary rulings such as custody decisions. Questions of law are reviewed for clear legal error. A trial court commits clear legal error when it incorrectly chooses, interprets, or applies the law." *Id*. (quotation marks and citations omitted).

### B. PROPER CAUSE OR CHANGE OF CIRCUMSTANCES

Plaintiff first contends that the trial court erred in making a threshold finding of proper cause or a change of circumstances when considering defendant's March 2018 motion to change custody, and erred again by failing to make a threshold finding of proper cause or change of circumstances when considering defendant's August 2018 motion to change custody. We agree with both contentions.

"The purposes of the Child Custody Act, MCL 722.21, *et seq*., are to promote the best interests of the child and to provide a stable environment for children that is free of unwarranted custody changes." *Lieberman v Orr*, 319 Mich App 68, 78; 900 NW2d 130 (2017) (quotation marks and citation omitted). The Child Custody Act authorizes a trial court to award custody and parenting time arising out of a child custody dispute, and also imposes a gatekeeping function on the trial court to ensure the child's stability. *Id*. Under § 27 of the Act, MCL 722.27, a trial court may modify or amend a previous child custody order or judgment "for proper cause shown or because of change of circumstances" if doing so is in the child's best interest. *Bowling v McCarrick*, 318 Mich App 568, 569; 899 NW2d 808 (2017).

Thus, a party seeking to modify an existing child custody order must first establish proper cause or a change of circumstances before the trial court may reopen the custody matter and hold a hearing to assess whether the proposed modification is in the child's best interests. *Id*. at 570, citing *Vodvarka v Grasmeyer*, 259 Mich App 499, 509; 675 NW2d 847 (2004). The purpose of

the threshold showing of either proper cause or a change of circumstances "is to minimize unwarranted and disruptive changes of custody orders, except under the most compelling circumstances." *Lieberman*, 319 Mich App at 83, quoting *Corporan*, 282 Mich App at 603. If the party seeking to change custody does not prove by a preponderance of the evidence either proper cause or a change of circumstances, the trial court is not authorized by the Child Custody Act to revisit an existing custody decision and engage in a reconsideration of the statutory best-interest factors. *Lieberman*, 319 Mich App at 82.

"Proper cause" sufficient to revisit a custody order requires the party seeking the custody change to prove by a preponderance of the evidence the existence of an appropriate ground; the ground must be relevant to at least one of the twelve statutory best-interest factors, and must be of such magnitude that it has a significant effect on the well-being of the child. *Corporan*, 282 Mich App at 604. To demonstrate a "change of circumstances," the party seeking to change custody must prove that after the entry of the last custody order, the conditions surrounding the child's custody which have or could have a significant effect on the child's well-being have materially changed, and the change has had, or will almost certainly have, an effect on the child. This determination is to be made based on the facts of each case that are relevant to the statutory best-interest factors. *Id.* at 604-605.

In *Vodvarka*, this Court noted that minor allegations of contempt and complaints regarding visitation are not sufficient to establish proper cause or a change of circumstances sufficient to warrant the trial court revisiting the child custody best-interest factors. *Vodvarka*, 259 Mich App at 510. However, proper cause may be demonstrated when the parties' disagreements escalate to topics significant to the well-being of the child, such as the child's education or medical treatment. See *Dailey v Kloenhamer*, 291 Mich App 660, 666; 811 NW2d 501 (2011); see also *McRoberts v Ferguson*, 322 Mich App 125, 132; 910 NW2d 721 (2017) (concluding that the visitation complaints and allegations of contempt were not minor when one party was compelled to fly needlessly across the country because the other party failed to produce the child.)

In addressing defendant's March 2018 motion to change custody, the trial court determined that defendant had proven by a preponderance of the evidence proper cause and a change of circumstances. Defendant alleged that there was a change of circumstances because plaintiff's actions in not supporting a relationship between defendant and the child presented "concern for her mental status." Defendant, however, offered no evidence that plaintiff was mentally ill; the only evidence offered purportedly demonstrating plaintiff's "mental illness," apart from defendant's opinion, was the testimony of the CPS investigator that in her opinion, plaintiff was slow to accept that the physicians examining the child had not substantiated any abuse. The CPS investigator also testified that, in her opinion, although plaintiff appeared sincerely concerned for the child, she was seeking too much medical care for the child. The CPS investigator, however, is not a doctor and did not testify that she had any medical expertise. Defendant, in fact, offered no medical evidence to support his theory that plaintiff was mentally ill and no medical evidence to demonstrate that too much medical care had been sought for the child.

Defendant has simply not articulated how plaintiff's conduct went beyond an appropriate level of concern for a report of potential abuse.[2]  Plaintiff testified that the child told her that defendant had hurt her, and she observed that the child's vagina was red and irritated.  She therefore sought the advice of her pediatrician.  The child's pediatrician notified CPS, setting in motion the process by which CPS and law enforcement arranged for another medical examination of the child.  According to the CPS worker, the medical examinations resulted in a conclusion that abuse had not been substantiated.  While it may be the case that the entire event was a false alarm, a parent who exhibits ongoing concern after learning that abuse is "not substantiated" is not necessarily mentally ill or emotionally unstable.[3]

Nonetheless, based upon this evidence, the trial court concluded that a change in circumstances had been demonstrated because plaintiff was suffering from "some mental health issues that was [sic] subjecting the child to unnecessary, unpleasant evaluations" and was, at times, "acting in an irrational manner, which had an effect on the child."  This created "a concern that the child was being traumatized overall by the mother's actions."  These findings lack any valid support in the record.[4]  In fact, there was virtually no evidence regarding the effect, if any, that the medical examinations had on the child, other than the CPS investigator's speculation.  When asked how a particular test affected the child, the CPS investigator testified "I am not entirely sure how it affected [the child] specifically, but I have seen the procedure done on other children as well as adults, and it's uncomfortable.  I would imagine [the child] did not handle it well, as she did not handle the evaluation of the Child Protection Team either."  Upon further examination, the CPS investigator admitted that she had not actually been present during the evaluation, but testified that she had been on the phone with the evaluator and had heard crying in the background.

In sum, a review of the record indicates that plaintiff, rightly or wrongly, suspected abuse of the child and took the child to her pediatrician, which set in motion the process involving CPS and law enforcement.  Defendant, upon learning that plaintiff had set in motion this process, brought a motion to change custody, alleging that plaintiff had mental health problems.  No medical evidence of plaintiff's mental health was presented; the trial court heard only the opinion testimony of the CPS investigator that plaintiff's level of concern was irrational.  On this record, the trial court's conclusion in its March 2018 order that a change of circumstances and proper cause had been proven by a preponderance of the evidence was against the great weight of the evidence.[5]

---

[2] Indeed, more concerning would be a parent who does not seriously consider a child's report of potential abuse.

[3] We note that a finding that abuse has not been substantiated is not equivalent to a finding that no abuse occurred.

[4] As noted above, a medical report was apparently provided to the trial court referee, but because the report was not entered into the record, we cannot consider it on appeal.

[5] We note that, generally, an issue must be raised before and considered by the trial court to be preserved for appellate review.  See *Elahham v Al-Jabban*, 319 Mich App 112, 119; 899 NW2d

In August 2018, defendant again moved for a change of custody. After a hearing, the trial court referee recommended a change of custody, awarding defendant primary physical custody of the child, and the trial court adopted the referee's recommendation. The trial court stated in its order that it previously had found that there was sufficient evidence to meet the threshold determination of proper cause or change of circumstances. Plaintiff sought de novo review in the trial court, arguing in part that defendant failed to established proper cause or change of circumstances. The trial court affirmed the change of custody. On appeal, plaintiff contends that the trial court erred by failing to make the threshold finding when considering defendant's new motion for change of custody. We agree.

As discussed, the trial court was precluded from considering whether a custody change was in the best interest of the child without first reaching the threshold question whether proper cause or a change of circumstances had been proven by a preponderance of the evidence. The trial court entered a custody and parenting time order in March 2018. Therefore, in addressing defendant's August 2018 second motion to change custody, the trial court was obligated to determine whether defendant had demonstrated proper cause or a change of circumstances since entry of the March 2018 order. In the alternative, because the trial court described its March 2018 order as "interim," it might be arguable that the August 2018 motion was a continuation of the proceedings from March 2018. Nevertheless, the trial court's March 2018 determination regarding proper cause or change of circumstances was erroneous. Therefore, that determination could not be relied upon in September 2018. In either event, the trial court erred by reaching the issue of the best interest of the child without first determining whether proper cause or change of circumstances had been established.

The paramount purpose of the Child Custody Act is "providing a stable environment for children that is free of unwarranted custody changes." *Shade v Wright*, 291 Mich App 17, 28; 805 NW2d 1 (2010). In keeping with that objective, the purpose of the proper cause or change of circumstances requirement is "to erect a barrier against removal of a child from an established custodial environment" and "to minimize unwarranted and disruptive changes of custody orders," except under the most compelling circumstances. *Id*. In this case, the trial court's finding that defendant had demonstrated proper cause or a change of circumstances in his March 2018 motion is against the great weight of the evidence, and the trial court failed to make a threshold finding on defendant's new motion for change of custody in August 2018. The trial court therefore erred by reaching the issue of the best interest of the child without first properly determining whether proper cause or change of circumstances had been established. See *Corporan*, 282 Mich App at 606.

---

768 (2017). Plaintiff objected to the September 2018 custody order, but she did not object to the March 2018 custody order. However, regardless of preservation, we may review an unpreserved issue when, as here, consideration of an issue is necessary to the proper determination of the case, or when the issue presents a question of law for which the facts necessary for its resolution are sufficiently present to permit this Court's review. *Smith v Foerster-Bolser Constr, Inc*, 269 Mich App 424, 427; 711 NW2d 421 (2006).

## C. ESTABLISHED CUSTODIAL ENVIRONMENT

Plaintiff next contends that the trial court erred when it found that an established custodial environment existed with defendant. Initially, we note that the trial court should not have reached this issue because defendant had not proven proper cause or a change of circumstances by a preponderance of the evidence. However, we also conclude that the trial court erred when it found the child to have an established custodial environment with defendant as well as with plaintiff.

A child's established custodial environment is the environment in which "over an appreciable time the child naturally looks to the custodian in that environment for guidance, discipline, the necessities of life, and parental comfort." MCL 722.27(1)(c); *Pierron v Pierron*, 486 Mich 81, 85-86; 782 NW2d 480 (2010). When modification of a custody order changes to whom the child looks for guidance, discipline, the necessities of life, and parental comfort and support, the movant must demonstrate by clear and convincing evidence that the change is in the child's best interests. MCL 722.27(1)(c); *Pierron*, 486 Mich at 85, 92. Whether an established custodial environment exists is a question of fact. *Foskett v Foskett*, 247 Mich App 1, 8; 634 NW2d 363 (2001). We will affirm a trial court's finding regarding the existence of an established custodial environment unless the evidence clearly preponderates in the opposite direction. *Pierron*, 486 Mich at 85.

It is possible for a custodial environment to be established in more than one home. *Rittershaus v Rittershaus*, 273 Mich App 462, 471; 730 NW2d 262 (2007). In this case, however, the record does not support a finding of an established custodial environment with defendant. At the time of the March 2018 motion for change of custody, the custody order that was in effect was the January 2018 stipulated order, in which plaintiff had primary physical custody of the child and defendant had parenting time on alternating weekends from Saturday at 9 a.m. to Sunday at 6 p.m. After defendant moved for a change of custody in March 2018, the trial court found that an established custodial environment existed primarily with plaintiff and to a lesser extent with defendant. The trial court ordered that "the parties shall share temporary joint physical custody" of the child, and that defendant would have parenting time "every weekend from Saturday at 10 a.m. to Sunday at 7 p.m," and also "five non-consecutive full weeks of parenting time each summer."

In August 2018, defendant again moved for a change of custody. Ruling on the motion in its September 2018 order, the trial court stated, in relevant part:

> The court finds that there are established custodial environments with both parents now. Defendant has been consistently exercising parenting time. [The child] looks to each parent for guidance, discipline, the necessities of life, and parental comfort during respective time with them. . . . Defendant does not seek to destroy the established custodial environment with plaintiff so the burden of proof is a preponderance of the evidence that a change is in the child's best interests.

A review of the record, however, does not support these findings. At the time of the September 2018 hearing on defendant's motion for change of custody, the child was approximately three and a half years old, and had lived almost exclusively with plaintiff for her

entire life. From the time the parties divorced in February 2016 until January 2018, defendant had minimal, supervised parenting time with the child. In January 2018, defendant's parenting time increased to one overnight visit every other week. In March 2018, his parenting time increased to one overnight visit every week.[6] Defendant's August 2018 motion seeking primary physical custody of the child most certainly sought to "destroy the established custodial environment with plaintiff."

The record also does not support the finding that over an appreciable time, the child looked to defendant for guidance, discipline, the necessities of life, and parental comfort and support. At the hearing, defendant testified that parenting was going "wonderful." When asked whether the child appeared to feel comfortable in his home and whether her needs were met there, he testified "yes." He testified that he was aware that the child had food allergies, but that he was not sure about which foods, and also that he was aware that the child had ongoing issues related to hip dysplasia. He also testified that he did not know the name of the child's pediatrician, but knew the name of the pediatrician's practice group. There was virtually no evidence that, over an appreciable time, the child had looked to defendant in that environment for guidance, discipline, the necessities of life, and parental comfort. Although it is possible for a child to have an established custodial environment with both parents, see *Rittershaus*, 273 Mich App at 471, in this case, the trial court's finding that the child had an established custodial environment with defendant was almost entirely without support, and therefore was against the great weight of the evidence. The trial court therefore was precluded from changing the child's custody unless defendant presented clear and convincing evidence that the change was in the best interests of the child. *Foskett*, 247 Mich App at 6. The trial court thus erred in changing custody upon a finding that the change was supported by only a preponderance of the evidence. See MCL 722.27; *Pierron*, 486 Mich at 86.

We vacate the custody orders of the trial court entered September 19, 2018 and February 28, 2019; we reinstate the trial court's Custody and Parenting-time order entered March 27, 2018; and we remand the matter to the trial court for further proceedings as it deems proper. On remand, the trial court "should consider up-to-date information," including any further evidence pertaining to the possibility of the child being abused while in defendant's care. *Fletcher v Fletcher*, 447 Mich 871, 889; 526 NW2d 889 (1994). We do not retain jurisdiction.

/s/ Michael F. Gadola
/s/ Jane E. Markey
/s/ Amy Ronayne Krause

---

[6] Additional parenting time was scheduled for the summer of 2018, but did not occur allegedly because plaintiff would not cooperate.