*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MICHELLE REID, also known as ALPENA
COUNTY ANIMAL CONTROL OFFICER,

UNPUBLISHED
July 2, 2019

Petitioner-Appellee,

v

No.  340955
Alpena Circuit Court
LC No.  17-007971-AP

KATRINA KRAMER and THOMAS
MAINFIELD,

Respondents-Appellants.

Before:  TUKEL, P.J., and SERVITTO and RIORDAN, JJ.

PER CURIAM.

Respondents appeal by leave granted[1] the circuit court's order upholding the district court's order to euthanize respondents' dog, "Bruiser."  We reverse and remand to the district court.

## I.  BACKGROUND

In July of 2017, petitioner, Alpena County Animal Control Officer Michelle Reid, filed a complaint against respondents alleging that "Bruiser", described as "a black and tan German Shepherd dog" , had attacked or bit a person.  The victim, Joshua Henderson, testified at a show cause hearing that as he was jogging past respondents' house on May 13, 2017, Bruiser ran toward Henderson, barked and lunged at him, and bit his left bicep and left forearm.  After Henderson struck Bruiser "a couple of times", Bruiser released Henderson's arm, and Henderson backed away until he was at a far enough distance to leave the area.  Henderson described his injuries as teeth marks and scrapes to his upper left bicep and several puncture wounds to his left forearm.  Henderson received three stitches and an x-ray to make certain that none of Bruiser's

---

[1] *Reid v Kramer*, unpublished order of the Court of Appeals, entered May 24, 2018 (Docket No. 340955).

teeth were left in the wounds. It was determined that rabies was not an issue. Henderson testified that he had jogged this same route "almost every day" and at different periods of the day for the approximately one year that he had lived in the area. Henderson explained that after the attack he had changed his jogging route, that there were several houses in the area, and that there were children often walking or riding bikes in the area.

Respondents stated that they had owned Bruiser for three years, that this was the first time Bruiser had attacked or bitten a person, that Bruiser had been raised with children and often had children around him, and that Bruiser often went next door to visit a neighbor. The prosecutor, clarifying that euthanization was not being sought at that time, indicated that respondents were in the process of completing a fence in their backyard, and that if the fence was not "acceptable" upon inspection, the prosecution would request that Bruiser be destroyed. The prosecutor additionally noted that Bruiser had already been sterilized.[2]

The district court found that Bruiser had caused serious injury to Henderson, and, noting the possibility that Bruiser might injure a child, the court ordered that Bruiser should be destroyed. Respondents appealed to the circuit court, which affirmed the district court's decision. The circuit court concluded that Bruiser was a "dangerous animal" under MCL 287.321(a) because the undisputed evidence showed that he had attacked and bit Henderson, that Henderson did not provoke Bruiser, and that no statutory exception applied. On respondents' motion, the circuit court stayed euthanization proceedings pending respondents' appeal to this Court.

## II. ANALYSIS

Respondents argue that the circuit court erred in determining that Bruiser was a "dangerous animal" under MCL 287.321(a) and, alternatively, that the evidence did not support a finding that Bruiser caused death or serious injury or that he was likely to do so in the future. Although we conclude that Bruiser was a "dangerous animal" under the statutory definition, we agree with respondents that the evidence was insufficient to support a conclusion that he caused serious injury or was likely to cause death or serious injury in the future, and that the lower courts therefore erred by ordering Bruiser's destruction under MCL 287.322(3).[3]

---

[2] See MCL 287.322(4) (requiring the court, if it finds that an animal is a dangerous animal but has not caused serious injury or death, to order the owner to take steps to protect the public, such as installing fencing or having the animal sterilized).

[3] We note that respondents' alternative arguments were not raised in the district court or circuit court and are therefore unpreserved and "not ordinarily subject to review." *Booth Newspapers, Inc v Univ of Mich Bd of Regents*, 444 Mich 211, 234; 507 NW2d 422 (1993). See also *Smith v Foerster-Bolser Constr, Inc*, 269 Mich App 424, 427; 711 NW2d 421 (2006). However, we have chosen to review these arguments because they hold merit and the failure to do so would result in "manifest injustice." *Foerster-Bolser*, 269 Mich App at 427.

Questions of statutory interpretation, construction, and application are reviewed de novo. *Dextrom v Wexford Co*, 287 Mich App 406, 416; 789 NW2d 211 (2010). The trial court's findings of fact are reviewed for clear error. MCR 2.613(C). Clear error occurs when "after a review of the record, this Court is left with a definite and firm conviction that a mistake was made." *Lawrence v Burdi*, 314 Mich App 203, 220; 886 NW2d 748 (2016).

MCL 287.321(a) defines what constitutes a "dangerous animal":

(a) "Dangerous animal" means a dog or other animal that bites or attacks a person, or a dog that bites or attacks and causes serious injury or death to another dog while the other dog is on the property or under the control of its owner. However, a dangerous animal does not include any of the following:

(*i*) An animal that bites or attacks a person who is knowingly trespassing on the property of the animal's owner.

(*ii*) An animal that bites or attacks a person who provokes or torments the animal.

(*iii*) An animal that is responding in a manner that an ordinary and reasonable person would conclude was designed to protect a person if that person is engaged in a lawful activity or is the subject of an assault.

(*iv*) Livestock.

MCL 287.322 describes the procedure that must occur for an animal to be destroyed. The statute states in pertinent part:

(1) Upon a sworn complaint that an animal is a dangerous animal and the animal has caused serious injury or death to a person or has caused serious injury or death to a dog, a district court magistrate, district court, or a municipal court shall issue a summons to the owner ordering him or her to appear to show cause why the animal should not be destroyed.

\* \* \*

(3) After a hearing, the magistrate or court shall order the destruction of the animal, at the expense of the owner, *if the animal is found to be a dangerous animal that caused serious injury or death to a person or a dog*. After a hearing, the court may order the destruction of the animal, at the expense of the owner, *if the court finds that the animal is a dangerous animal that did not cause serious injury or death to a person but is likely in the future to cause serious injury or death to a person* or in the past has been adjudicated a dangerous animal. [Emphasis added.]

In the present case, there was no dispute that Bruiser attacked and bit Henderson. Because Bruiser was "a dog . . . that bites or attacks a person," MCL 287.321(a), and because there is no indication that any of the enumerated exceptions apply, he was a "dangerous animal"

-3-

for purposes of MCL 287.322(3). However, in order for an animal to be destroyed, it must be more than dangerous; it must have caused death or serious injury to a person or dog, or, if the animal did not cause death or serious injury, it must be likely to do so in the future or have been previously determined to be a "dangerous animal." MCL 287.322(3).

There is no dispute that Bruiser attacked Henderson and that Henderson survived. No other dog was involved, and the record does not show that Bruiser was previously determined to be a dangerous animal. Therefore, there are only two scenarios possible in order to allow for the dog to be destroyed. The first is that Bruiser's attack on Henderson caused "serious injury," which is defined to mean "permanent, serious disfigurement, serious impairment of health, or serious impairment of a bodily function of a person." MCL 287.321(e). While the scrapes, puncture wounds, and three stitches were undoubtedly uncomfortable for Henderson to endure, these injuries did not rise to the level of a "serious injury" as defined under MCL 287.321(e). There was no evidence to show that Henderson endured permanent injury to his forearm or bicep or disfigurement of his forearm or bicep, or that a bodily function was impaired.

The second possible scenario is that Bruiser was likely to cause serious injury or death in the future. MCL 287.322(3). Henderson testified that he had jogged the same route "almost every day" and at different periods of the day for approximately one year. This was the only time that Bruiser attacked him. Additionally, although Henderson stated that there were "often children on bikes and children walking that I would encounter on my runs", there was no indication that Bruiser ever attacked or acted aggressively toward them. Furthermore, respondents stated that they had owned Bruiser for three years, that this was the first time Bruiser had attacked a person, that Bruiser often had children around him and had been raised with a young child, and that Bruiser had often gone next door to visit a neighbor.

The district court did not base its decision to order Bruiser's destruction on the language of MCL 287.322 or on concrete evidence demonstrating that Bruiser was *likely* to attack or bite a person in the future. Instead, the district court stated:

> Because of the *possibility*. If tomorrow that animal goes out and injures or kills a child, you and I and everybody else here, *how would we feel*? See? *How would we feel*? *I can't take that risk* because we *know*. [Emphasis added.]

Under the district court's reasoning, every animal that had attacked or bitten a person could be destroyed because, by attacking or biting once, "we know" that it is now more likely to do so again. This interpretation of MCL 287.322(3) is improper because it would render the other portions of this subsection nugatory or surplusage, a violation of statutory interpretation principles. See *Pittsfield Charter Twp v Washtenaw Co*, 468 Mich 702, 714; 664 NW2d 193 (2003). There would be no reason to include the first scenario, i.e., that the animal has caused death or serious injury to a person, in the statute because every animal, by virtue of the fact that it attacked or bit a person, would be likely to cause death or serious injury in the future. In other words, the animal, by being a "dangerous animal," could be destroyed. We believe a proper reading of MCL 287.322(3) requires some other evidence, in addition to the fact that the animal

has attacked or bitten once, indicating that the animal is likely to cause death or serious injury to a person in the future, such as evidence of prior attacks, aggressive behavior, or the severity of the attack or bite.[4]

Therefore, the circuit court erred by affirming the district court's order because the evidence did not support a finding that Bruiser had caused serious injury or death to a person or that he was likely to cause death or serious injury to a person in the future.[5]

Reversed and remanded to the district court for proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Jonathan Tukel
/s/ Deborah A. Servitto
/s/ Michael J. Riordan

---

[4] We do not dismiss the possibility that there could be circumstances that would support a finding that an animal was likely to cause death or serious injury in the future based on a single incident. However, we do not believe that the facts of this case support such a finding.

[5] On remand, the district court shall apply MCL 287.322(4) and impose appropriate requirements under MCL 287.322(4)(a)-(e).