*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

FREMONT INSURANCE COMPANY,

Appellee,

v

LIGHTHOUSE OUTPATIENT CENTER,

Appellant,

and

DIFS- MI DEP OF INS & FINANCIAL SERV, also known as DEPARTMENT OF INSURANCE & FINANCIAL SERVICES.

Other Party.

FOR PUBLICATION
April 11, 2025
11:00 AM

No. 370500
Newaygo Circuit Court
LC No. 2023-020963-AA

Before: GADOLA, C.J., and WALLACE and ACKERMAN, JJ.

PER CURIAM.

This appeal by right follows an appeal in the circuit court challenging the outcome of a medical provider's automobile insurance utilization review appeal to the Department of Insurance and Financial Services (DIFS). Lighthouse Outpatient Center (Lighthouse) had filed that provider appeal, disputing the payment made by no-fault insurer, Fremont Insurance Company (Fremont), for services Lighthouse provided in 2023 to a patient, Valerie Wasserman, who was insured by Fremont and sustained her compensable injuries in 2018, before amendments were made to the no-fault act by the Legislature when it enacted 2019 PA 21 and 2019 PA 22. Lighthouse had billed for services it provided using a post-amendment fee schedule, but Fremont paid for those services using the pre-amendment "reasonable and customary" payment methodology, which was less than the amount billed by Lighthouse. Lighthouse appealed the decision to DIFS, and DIFS relied on the post-amendment fee schedules; thus, concluding that Lighthouse was entitled to additional monies. Fremont filed a Petition for Judicial Review in the Newaygo County Circuit Court, which ultimately entered an opinion and order reversing DIFS, concluding that the pre-amendment reimbursement methodology applied and that Fremont's payment to Lighthouse was proper.

Lighthouse appeals that decision—although it now agrees that the pre-amendment payment methodology applies—but wants this Court to affirm the decision that the DIFS conclusion was erroneous. Lighthouse also argues that Fremont's reimbursement for its services was insufficient and not "reasonable and customary." For the reasons stated below, we affirm the order of the circuit court.

## I. FACTUAL AND PROCEDURAL HISTORY

On September 26, 2018, Valerie Wasserman sustained accidental bodily injuries in a motor vehicle accident, at which time she was insured under a no-fault insurance policy issued by Fremont. Subsequently, in April, 2023, Wasserman received accident-related healthcare services from Lighthouse and Lighthouse billed Fremont for them. Fremont issued payment to Lighthouse "in accordance with the reasonable and customary charge directives of the no-fault act, MCL 500.3107(1)(a) and MCL 500.3157, as those provisions existed before June 11, 2019, the effective date of the no-fault reform amendments under 2019 PA 21 . . . ." In particular, Lighthouse had billed for its services: $196.44, 171.80, and $261.36, and Fremont paid $185.97, $140.94, and $153.83, respectively.

Lighthouse subsequently filed with DIFS an Auto Insurance Utilization Review Provider Appeal Request, contending that it had been underpaid and that it was entitled to be paid the amounts billed. Lighthouse claimed that it was entitled to be paid consistent with the post-amendment fee schedules, as provided on June 11, 2019 by 2019 PA 21, not the pre-amendment "reasonable and customary" payment methodology Fremont relied upon to pay for those services.

By order issued and entered on September 29, 2023, DIFS agreed with Lighthouse, concluding that Lighthouse was entitled to additional reimbursement by Fremont for the services provided. DIFS held, in relevant part: "For dates of service after July 1, 2021, MCL 500.3157 governs the appropriate cost of treatment . . . ." In other words, reimbursement rates were to be calculated under the post-amendment fee schedules. DIFS also noted: "The Michigan Supreme Court's opinion in *Andary v USAA Cas Ins Co*, ___ Mich ___; ___ NW2d ___ (2023) (Docket No. 164772), governs the applicability of MCL 500.3157(7) and (10) to accidents occurring before June 11, 2019. Because the services at issue in this appeal are reimbursable under MCL 500.3157(2), the *Andary* opinion has no bearing on the outcome of this appeal."

Fremont appealed the DIFS decision, filing a petition for judicial review in the Newaygo Circuit Court on October 18, 2023, seeking a determination that it properly reimbursed Lighthouse as calculated under the pre-amendment payment methodology. Freemont argued that the DIFS decision was erroneous as a matter of law because, as our Supreme Court held in *Andary v USAA Cas Ins Co*, 512 Mich 207; 1 NW3d 186 (2023), the amended version of MCL 500.3157, including subsections (2), (8), (9), and 15(f) do not apply to PIP claims for injuries arising from accidents that occurred before June 11, 2019, like in this case. Fremont further argued: "While the only amendatory subsections directly at issue in *Andary* were § § 3157(7) and (10), the analysis and express language in *Andary*, along with the text of the statutory provisions themselves, make it clear that *Andary*'s holding that subsections (7) and (10) are inapplicable to claims arising from pre-amendment accidents applies with equal force to the rest of the amendatory subsections, § 3157(2)-(15)." Simply stated, Fremont argued, as *Andary* held, contractual and statutory rights for both the insured and the insurer were vested at the time of the accident; accordingly, with

-2-

regard to a pre-reform claim, pre-reform reimbursement law, principles, and billing procedures apply.

On December 27, 2023, Fremont filed a brief in support of its petition for judicial review, framing the question presented as follows:

> Whether DIFS reversibly erred by applying the amendatory subsections of § 3157 to calculate reimbursement amounts for the provider services at issue where, under the Supreme Court's opinion in *Andary v USAA Cas Ins Co*, the injured claimant's entitlement to benefits is controlled by her pre-reform insurance policy and the version of the no-fault act as it existed when the accident occurred in 2018, not by the provisions added to the statute in June 2019?

In its argument, Fremont acknowledged that the no-fault act was substantially amended by 2019 PA 21 and 2019 PA 22, effective June 11, 2019. As relevant here, Fremont noted, the amendments added 14 subsections to MCL 500.3157, where previously there was only a single paragraph with no subsections. However, Fremont argued that because the accident giving rise to Wasserman's entitlement to PIP benefits occurred before the amendments, Fremont's payment of PIP claims was to be based on the pre-amendment payment methodology, i.e., the reasonable and customary standard, just as the Michigan Supreme Court held in *Andary*. Accordingly, Fremont argued, its substantial rights were prejudiced because the DIFS order erroneously applied the amended terms of MCL 500.3157, which constituted a material error of law, and entitled Fremont to relief in the form of reinstatement of Fremont's determination of the amounts reimbursable to Lighthouse for services rendered to Wasserman. Included as attachments to Fremont's brief were some billing and medical records of Wasserman related to treatment she received from Lighthouse.

On February 1, 2024, Lighthouse filed a response to Fremont's brief in support of its petition for judicial review, arguing that, in pursuing its original appeal with DIFS, it had relied on DIFS Bulletin 2024-06-INS, issued January 17, 2024, which stated: "In *Andary*, the Michigan Supreme Court expressly limited its holding to MCL 500.3157(7) and (10). The remainder of the enacted provisions, including the remainder of the fee schedule, are accordingly unaffected by that decision." Lighthouse attached a copy of this DIFS Bulletin to its responsive brief.

Lighthouse asserted that the Supreme Court's decision in *Andary* should control and leads to the conclusion that Wasserman's right to unlimited, lifetime PIP benefits vested at the time she sustained a compensable injury and, in this case, before the no-fault amendments. Thus, Lighthouse's rate of reimbursement should be at the pre-amendment rates. Further, Lighthouse argued, the reasoning in *Andary* should apply to the whole of MCL 500.3157, as amended, because its subparts are so mutually connected, dependent, and intertwined that it is clear the Legislature intended they be considered as a whole. Thus, the DIFS interpretation of MCL 500.3157 is contrary to its plain terms, as interpreted by the *Andary* Court, and is erroneous.

On February 26, 2024, a hearing was held by the Newaygo Circuit Court, and the parties argued consistently with their briefs, including that Lighthouse continued to agree with Fremont that the former "reasonable and customary" standard applied here. The court took the matter under advisement.

On March 25, 2024, the circuit court issued its opinion and order reversing the DIFS decision. Following a recitation of the facts, the court noted that it had jurisdiction over the appeal and that the standard of review was de novo because the question presented an issue of law. The court held that Fremont's substantial rights were prejudiced when DIFS determined that the post-reform reimbursement fee schedule applied with regard to the pre-reform injuries at issue in this case. The circuit court noted that the Supreme Court in *Andary* recognized that PIP benefits are both statutory and contractual rights. It further noted that long-settled rules applied, including that, for insurance purposes, rights and obligations vest at the time of an accident. Also, with respect to contract law, it said the law that exists at the time a contract is made is the law that governs that contract. Thus, the circuit court concluded that the parties here were bound by the law in effect at the time the contract was made. Moreover, the court noted the *Andary* Court concluded that the Legislature demonstrated no clear intent to make the amended provisions retroactive to pre-reform PIP claims. The circuit court held that, while *Andary* concerned only MCL 500.3157(7) and (10), the analysis and conclusions equally apply in this case. Therefore, it said the pre-amendment payment method of determining the reasonableness of the charges applies and Fremont paid Lighthouse the proper amount. Accordingly, the determination of DIFS was reversed and Fremont's payment to Lighthouse was deemed proper.

This appeal as of right by Lighthouse followed.

## II. STANDARD OF REVIEW

The interpretation and application of a statute presents a question of law that the appellate court reviews de novo. *Whitman v City of Burton*, 493 Mich 303, 311; 831 NW2d 223 (2013). DIFS rendered its opinion on the matter and, as our Supreme Court explained in *In re Complaint of Rovas Against SBC Mich*, 482 Mich 90, 117-118; 754 NW2d 259 (2008), when an administrative agency like DIFS construes a statute, such

> agency interpretations are entitled to respectful consideration, but they are not binding on courts and cannot conflict with the plain meaning of the statute. While the agency's interpretation may be helpful in ascertaining the legislative intent, courts may not abdicate to administrative agencies the constitutional responsibility to construe statutes. Giving uncritical deference to an administrative agency would be such an improper abdication of duty.

In other words, "the agency's interpretation is not binding on the courts, and it cannot conflict with the Legislature's intent as expressed in the language of the statute at issue." *Id*. at 103.

## III. ANALYSIS

### A. THE DIFS INTERPRETATION OF *ANDARY*

The circuit court did not err in concluding that the DIFS interpretation of our Supreme Court's holding in *Andary* was erroneous. The pre-amended version of MCL 500.3157 applies to PIP claims arising from a motor vehicle accident that occurred before the effective date of 2019 PA 21 and 2019 PA 22, pursuant to a no-fault policy of insurance that was issued before that date.

The history of Michigan's no-fault act, MCL 500.3101 *et seq*., was fully explained in *Andary* and will not be repeated here. See *Andary*, 512 Mich at 216-218. The provision of the no-fault act at issue in this case is MCL 500.3157, which as enacted by 1972 PA 294, provided:

> A physician, hospital, clinic or other person or institution lawfully rendering treatment to an injured person for an accidental bodily injury covered by personal protection insurance, and a person or institution providing rehabilitative occupational training following the injury, may charge a *reasonable* amount for the products, services and accommodations rendered. The charge shall not exceed the amount the person or institution *customarily* charges for like products, services and accommodations in cases not involving insurance. [Emphasis supplied.]

As the *Andary* Court explained, in 2019, "the Michigan Legislature made sweeping changes to Michigan's no-fault statutes when it enacted 2019 PA 21 and 2019 PA 22." *Andary*, 512 Mich at 218. As relevant to this case, MCL 500.3157 was significantly amended, adding many new subsections.[1]

In *Andary*, 512 Mich 207, the plaintiffs suffered injuries in automobile accidents that occurred before 2019, i.e., before the amendments became effective, and had been receiving PIP benefits under the "reasonable and customary" payment methodology through their no-fault insurance policies. The issue in that case, primarily, was whether the 2019 amendments of MCL 500.3157—and particularly subsections (7) and (10)—applied retroactively to their PIP claims. *Andary*, 512 Mich at 215, 221. Our Supreme Court held, first:

> PIP benefits mandated by the no-fault act are both statutory and contractual in nature in cases in which the injured person is provided PIP benefits as a covered individual under the terms of a no-fault insurance policy. Accordingly, the PIP benefits under a no-fault insurance policy remain binding post-injury as to the individuals covered by the policy unless clearly and retroactively invalidated by the Legislature. [*Id*. at 238.]

Second, the *Andary* Court held, "the scope of available PIP benefits under an insurance policy vests at the time of injury." *Id*. That is also when an insurer's legal obligation to pay PIP benefits for all reasonable and necessary medical expenses, MCL 500.3107, is triggered. *Id*. at 241-242. And "the law in place at the time the parties' rights and obligations vested under a contract control absent a clear retrospective modification." *Id*. at 243-244. Stated differently, the insureds' "rights under the insurance policies for reimbursement of all reasonable and necessary medical expenses at a particular (uncapped) level, if those expenses occur, vested at the time of the automobile accidents causing their injuries—the events that triggered the coverage provided by the insurance policies." *Id*. at 244. The *Andary* Court further explained:

---

[1] The current version of MCL 500.3157 has 14 subsections. Subsection (1) contains language that is similar to the prior statute, while the language in subsections (2) through (14) was added. In other words, subsection (1) is an amended version of the prior statute, whereas the remaining subsections contain new provisions that were added on June 11, 2019.

Unlike other insurance policies, uncapped PIP benefits are unique in that an insured accident victim's incurrence of an injury triggers an ongoing legal duty for the insurer under the insurance agreement to pay lifetime allowable medical expenses arising from the injuries caused by the accident. In other words, the absence of a statutory or contractual monetary cap or policy limit for lifetime PIP benefits prior to the 2019 no-fault amendments, and the lack of an ongoing payment or performance obligation on the part of the insured, made the contractual rights held by PIP benefit recipients distinguishable from contractual rights held by individuals covered by other types of insurance policies. [*Id*. at 244-245.]

Third, the 2019 amendments of MCL 500.3157, specifically subsections (7) and (10), did not retroactively modify these uncapped lifetime benefits. That is so because: (1) there is no specific language in the amended statutes that provides for their retroactive application, i.e., there is an absence of express legislative intent in that regard, *id*. at 247-248; (2) the subsections at issue did "not directly relate to antecedent events because, on their face, they apply to all services and care rendered after the listed effective dates," *id*. at 251; and (3) their retroactive application would impair vested contractual rights to PIP reimbursement for medical treatment at a particular level[2] because "a no-fault insurance policy issued prior to the 2019 no-fault amendments guaranteed *uncapped lifetime PIP benefits* for those who suffered catastrophic injuries," *id*. at 252.

In summary the *Andary* Court concluded that application of the 2019 amendments of MCL 500.3157(7) and (10) to the insureds in that case would result in "a retroactive reduction of their vested contractual rights to receive uncapped PIP benefits pursuant to the insurance policies and incorporated statutes that existed when they were injured." *Id*. at 256. Further, there was no clear Legislative intent to apply the amendments retroactively to insureds with vested contractual rights to PIP benefits under the pre-amendment no-fault statutes so those provisions "do not apply to any insured who was injured while covered by an insurance policy issued before June 11, 2019." *Id*. at 257. Thus, the insurance policies and the no-fault statutes that existed when the insureds in that case were injured controlled their entitlement to PIP benefits, not the amended provisions enacted by 2019 PA 21 and 2019 PA 22. *Id*.

This case, like the injured-insureds in *Andary*, involves an insured who suffered injuries in an automobile accident prior to 2019, and was entitled to uncapped lifetime medical care covered by PIP benefits under an insurance policy issued before the accident, consistent with the no-fault act, MCL 500.3101 *et seq*. See *Andary*, 512 Mich at 214. Although Lighthouse now agrees with Fremont that the pre-amendment payment methodology used for determining the reasonableness of the charges applies to PIP claims arising before the no-fault amendments, Lighthouse requests that this Court affirm the circuit court's decision that the DIFS order dated September 29, 2023, as well as DIFS's Bulletin 2024-06-INS issued January 17, 2024, upon which the decision relied, are both erroneous.

---

[2] That is, "the only relevant limitations on payable PIP benefits were that the lawfully provided treatment or care had to be reasonable and necessary." *Id*. at 254.

In relevant part, DIFS Bulletin 2024-06-INS interpreted the holding in *Andary*, 512 Mich 214, to be "that MCL 500.3157(7) and MCL 500.3157(10) do not apply to the cost of treatment provided to persons injured in motor vehicle accidents occurring before June 11, 2019." But further, DIFS's Bulletin states the *Andary* holding is specifically limited to those two provisions of MCL 500.3157, and thus, the other enacted provisions were unaffected by the *Andary* decision such that the post-amendment fee schedules apply. In deciding Lighthouse's Utilization Review Provider Appeal Request, DIFS relied on its Bulletin, to conclude that Lighthouse was entitled to be paid for its medical services consistent with the post-amendment fee schedules and not in accordance with the pre-amendment "reasonable and customary" payment methodology. In other words, regardless of when the compensable injuries were incurred or when the no-fault policy was obtained through which the PIP benefits are provided, the rate of reimbursement for medical services received after July 1, 2021 was governed by the post-amendment fee schedules set forth in MCL 500.3157.

DIFS misinterpreted the holding in *Andary*. The reasoning of *Andary* is not limited to merely reimbursement issues arising under MCL 500.3157(7) (capping reimbursement for services not covered by Medicare) and (10) (limiting reimbursable hours for family-provided attendant care). As the parties have argued, the same reasoning set forth in the Supreme Court's decision in *Andary*—as to subsections (7) and (10)—is applicable to the entirety of MCL 500.3157, as amended, with respect to pre-amendment PIP claims. As the *Andary* Court held, the right to the PIP benefits mandated by the no-fault act are both contractual and statutory in nature in cases where the injured person is covered under the terms of a no-fault insurance policy. *Andary*, 512 Mich at 231, 238. Further, the scope of PIP benefits to which an insured is entitled under such insurance policy vests at the time of injury, *id*. at 238-239, and the governing law that applies is the law as it existed when the contract was entered, *id*. at 240-242. Although a right to reimbursement for medical expenses, for example, does not accrue until the expense is actually incurred, MCL 500.3110(4), the right to seek reimbursement for such expense if it accrues, vested at the time of compensable injury—which is the event that triggered coverage provided by the no-fault insurance policy. *Id*. at 244. The *Andary* Court did consider whether the 2019 amendments of MCL 500.3157 retroactively modified uncapped lifetime benefits as contracted and concluded that they did not because, in short, the Legislature did not state that they were retroactive and their retroactive application would impair vested contractual rights. *Id*. at 247-252.

We recognize that the *Andary* Court's analysis and conclusion referenced only MCL 500.3157(7) and (10)—as those were the provisions at issue in that case—but the Court's reasoning and holdings are equally applicable to this case involving MCL 500.3157(2)(b), (8) and (9), as well as cases under similar circumstances. The *Andary* Court concluded:

> application of the 2019 amendments of MCL 500.3157(7) and (10) to [the insureds] would constitute a retroactive reduction of their vested contractual rights to receive uncapped PIP benefits pursuant to the insurance policies and incorporated statutes that existed when they were injured. The Legislature did not clearly state that it intended the new fee schedule in MCL 500.3157(7) or the new attendant care limitations in MCL 500.3157(10) to apply retroactively to individuals with a vested contractual right to PIP benefits under the pre-amendment no-fault statutes, which means that these provisions do not apply to any insured who was injured while covered by an insurance policy issued before June 11, 2019. Accordingly, the

insurance policies and the disputed portion of the no-fault statutes that existed when [the insureds] were injured control their entitlement to PIP benefits, not the amended provisions enacted by 2019 PA 21 and 2019 PA 22. [*Id*. at 256-257 (footnote omitted).]

That rationale applies in this case as well: the application of the 2019 amendments of MCL 500.3157(2)(b), (8), and (9) to Wasserman would constitute a retroactive reduction of her vested contractual rights to receive uncapped PIP benefits under her insurance policy and the no-fault statute as it existed when she was injured. There is no indication by the Legislature that it intended the amendments of MCL 500.3157 at issue here to apply retroactively to individuals like Wasserman who have vested contractual rights to PIP benefits under the pre-amendment no-fault statutes, "which means that these provisions do not apply to any insured who was injured while covered by an insurance policy issued before June 11, 2019." *Id*. at 257. Therefore, Wasserman's no-fault insurance policy and the no-fault statute that existed at the time she was injured controls her entitlement to PIP benefits, "not the amended provisions enacted by 2019 PA 21 and 2019 PA 22." *Id*. As argued by both parties in this case, Lighthouse was entitled to reimbursement for services it provided to Wasserman under the pre-amendment "reasonable and customary" payment methodology.[3] Accordingly, the circuit court properly held that the DIFS order—which concluded that post-amendment fee schedules applied for dates of service after July 1, 2021, was erroneous and reversed that decision. The circuit court's opinion and order in this regard is affirmed.

## B. REASONABLE AND NECESSARY AMOUNT

Lighthouse argues that the record contained no evidence that the amount paid by Fremont to Lighthouse was "reasonable and customary." Lighthouse explains that, pursuant to MCL 500.3107(1)(a), PIP benefits are payable for "[a]llowable expenses consisting of all reasonable charges incurred for reasonably necessary products, services, and accommodations for an injured person's care, recovery or rehabilitation." Only reasonable proof of the amount of loss is required. See *Williams v AAA Mich*, 250 Mich App 249, 267; 646 NW2d 476 (2002), citing MCL 500.3142(2). Further, a healthcare provider's reasonable charges must not exceed the amount it customarily charges for like treatment. See MCL 500.3157 (pre-amended). However, Lighthouse argues, the issue of what is considered a "reasonable" charge is ultimately a question of fact for the jury. *Spectrum Health Hosps v Farm Bureau Mut Ins Co of Mich*, 333 Mich App 457, 484; 960 NW2d 186 (2020). In this case, according to Lighthouse, the circuit court had the authority to review the legal standard applied by DIFS, but it erred when it additionally concluded that Fremont paid the proper amount to Lighthouse because there was insufficient evidence in the

---

[3] In their briefs on appeal both parties refer to an unpublished order entered by this Court which peremptorily reversed a circuit court's decision that a plaintiff was entitled to PIP benefits under the amended version of MCL 500.3157, *Prescribed Therapy LLC v Auto Club Group Ins Co*, unpublished order of the Court of Appeals, entered August 30, 2023 (Docket No. 365267). Relying on our Supreme Court's holding in *Andary*, 512 Mich 207, this Court held: "the insurance policy and version of the no-fault act that existed when [the insured] was injured control her entitlement to PIP benefits and, in turn, [the] plaintiff's entitlement to PIP benefits." *Id*. However, clearly, an unpublished order of this Court is not precedentially binding. See MCR 7.215(C)(1).

record to support that conclusion. Accordingly, the matter should have been remanded to DIFS for further proceedings on the issue.

Fremont argues that Lighthouse never challenged, in either its appeal to DIFS or in the circuit court, "Fremont's determination of reasonable and customary charges based on the Fair Health Charge Benchmark database," thus, this Court should reject Lighthouse's contention that the circuit court erroneously failed to remand this matter to DIFS for further proceedings. In other words, Fremont argues, this issue—which was not raised below—is not preserved for appellate review. Further, Fremont argues, although Lighthouse's attorney suggested during oral argument that Lighthouse disagreed with the amount Fremont paid under the reasonable and necessary standard, such assertion was the first and only reference to such issue and it was insufficient to preserve this matter for appeal. In fact, no evidence was ever offered by Lighthouse to dispute Fremont's reasonable-charge determination. Lighthouse only challenged whether the pre-amended or post-amended version of MCL 500.3157 applied. Accordingly, this Court should refuse to consider this issue anew and should affirm the circuit court's conclusion that Fremont "paid the proper amount to Lighthouse." We agree.

To preserve an issue for appeal, the party claiming the error must show that the issue was raised in the trial court. *Tolas Oil & Gas Exploration Co*, 347 Mich App at 289. In its Utilization Review Provider Appeal Request filed with DIFS, Lighthouse argued that it should have been paid consistent with the post-amendment fee schedules and not under the pre-amendment "reasonable and customary" payment methodology; thus, it was underpaid by Fremont for its healthcare services. DIFS agreed with Lighthouse, which led to Fremont challenging that holding in the circuit court on appeal. Fremont argued that the pre-amendment payment methodology applied and the circuit court agreed. Lighthouse did not challenge, in either DIFS proceeding or the circuit court appeal, Fremont's reimbursement on the ground that it was not "reasonable and customary." As Fremont argues, this issue is not preserved for appellate review.[4] Accordingly, Lighthouse is not entitled to appellate consideration of this issue.

## IV. CONCLUSION

The circuit court properly held that the DIFS order—which concluded that post-amendment fee schedules applied for dates of service after July 1, 2021—was erroneous and reversed that decision. The circuit court's opinion and order in this regard is affirmed.

---

[4] We recognize that, in a civil case, this Court "may overlook preservation requirements if the failure to consider the issue would result in manifest injustice, if consideration is necessary for a proper determination of the case, or if the issue involves a question of law and the facts necessary for its resolution have been presented." *Smith v Foerster-Bolser Constr, Inc*, 269 Mich App 424, 427; 711 NW2d 421 (2006). We find that the subject unpreserved issue does not meet the requirements of *Smith*.

Lighthouse is not entitled to appellate consideration of the issue whether Fremont's reimbursement was "reasonable and customary" because that issue was not raised below; thus, it is not preserved for review.

Affirmed.

/s/ Michael F. Gadola
/s/ Randy J. Wallace