*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ADVISACARE HOME HEALTHCARE
SOLUTIONS, INC., doing business as
ADVISACARE,

UNPUBLISHED
October 27, 2025
3:25 PM

        Plaintiff-Appellee,

v

No. 368589
Kent Circuit Court
LC No. 22-010025-NF

AUTO CLUB GROUP INSURANCE COMPANY,
doing business as AAA OF MICHIGAN,

        Defendant-Appellant.

Before: RICK, P.J., and MALDONADO and KOROBKIN, JJ.

PER CURIAM.

In this no-fault action, defendant appeals by leave granted[1] the trial court order granting plaintiff's motion for partial summary disposition under MCR 2.116(C)(10). We affirm.

## I. FACTS

Plaintiff provides medical care and services to individuals who have been seriously injured in automobile accidents, and defendant provides automobile insurance to those individuals. This case arises from recent amendments to the no-fault insurance act, MCL 500.3101 *et seq.*, and plaintiff's allegation that defendant—relying on new fee caps in amended MCL 500.3157—paid less than what plaintiff reasonably charged for its services.

Although plaintiff brought this action with regard to a number of its patients, the parties focus solely on Valerie Carah in this appeal. On August 22, 2020, Carah suffered substantial injuries in an automobile accident and subsequently required home-health-aide services and nursing care, which her doctor prescribed. At the time of her injury, Carah was insured by

---

[1] *Advisacare Home Healthcare Solutions, Inc v Auto Club Group Ins Co*, unpublished order of the Court of Appeals, entered May 24, 2024 (Docket No. 368589).

defendant. In July 2021, significant changes to the no-fault act took effect, including, among other things, new fee caps for services provided. Before July 2021, defendant paid $28.55 an hour for home-health-aide services provided to Carah. After July 2021, relying on the new fee caps in MCL 500.3157, defendant paid $17.45 an hour for those same services.

Plaintiff initiated the present action, alleging breach of contract and a violation of the no-fault act and sought declaratory relief. Plaintiff asked the trial court to rule that defendant could not use amended MCL 500.3157 to reduce reimbursement or that amended MCL 500.3157 still requires full payment of plaintiff's reasonable charges. Plaintiff then moved for partial summary disposition under MCR 2.116(C)(10), arguing that there were amounts payable under Medicare for home-health-aide and skilled-nursing care; therefore, plaintiff's charges are subject to the cap in MCL 500.3157(2) (200% of the amount payable under Medicare). Defendant argued that Medicare does *not* have an amount payable for such services on a "fee-for-service rate basis" and only reimburses such services under a prospective billing system; therefore, plaintiff's charges are subject to the cap in MCL 500.3157(7) (55% of the average amount charged for the treatment on January 1, 2019).

The trial court entered an opinion and order granting plaintiff's motion. In particular, the trial court found that there were Medicare amounts payable for home-health aide and skilled-nursing care or at least there were "sufficiently similar services under Medicare"; therefore, MCL 500.3157(2) applied. The trial court supported its decision by citing the Medicare billing codes for home-health-aide services and skilled-nursing services, which it noted defendant used in its Explanations of Benefits. The trial court also found that Medicare issued publications providing guidance to home health providers who provided care on a fee-for-service basis, which included references to the home-health prospective payment system. Defendant moved for reconsideration of the trial court's order, which the trial court denied. This appeal followed.

## II. DISCUSSION

## A. WHICH NO-FAULT LIMITATION CAP APPLIES

Defendant first contends that the trial court erred by finding that payments for home-health-aide and skilled-nursing care were subject to the limits in MCL 500.3157(7), rather than the limits in MCL 500.3157(2). We disagree.

We review "de novo the trial court's decision to grant or deny summary disposition." *Hubbard v Stier*, 345 Mich App 620, 625; 9 NW3d 129 (2023). Under MCR 2.116(C)(10), the question is whether a party is entitled to judgment or partial judgment as a matter of law because there is no genuine question of material fact. MCR 2.116(C)(10). "A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ." *Piccione v Gillette*, 327 Mich App 16, 19; 932 NW2d 197 (2019). To the extent that the resolution of these issues also requires statutory interpretation, such review also is de novo. *Sherman v St Joseph*, 332 Mich App 626, 632; 957 NW2d 838 (2020).

More than 50 years ago, the Legislature enacted the no-fault act "as an innovative social and legal response to the long payment delays, inequitable payment structure, and high legal costs inherent in the tort (or "fault") liability system." *Shavers v Kelley*, 402 Mich 554, 578; 267 NW2d

72 (1978). Under the no-fault system, every Michigan motorist is required to purchase no-fault insurance to be able to legally operate a motor vehicle in the state, and victims of motor vehicle accidents receive insurance benefits for their injuries, rather than common-law remedies in tort. *Id*. at 579. With some exceptions, the no-fault act requires that "automobile insurance policies provide, at minimum, for payment of '[a]llowable expenses consisting of reasonable charges incurred for reasonably necessary products, services and accommodations for an injured person's care, recovery, or rehabilitation.' " *Andary v USAA Casualty Ins Co*, 512 Mich 207, 217; 1 NW3d 186 (2023), quoting MCL 500.3107(1)(a).

Although "Michigan's system of no-fault insurance has succeeded in ensuring lifetime benefits for those who suffer catastrophic injuries in an automobile accident, the issue of cost has been subject to ongoing debates for decades." *Andary*, 512 Mich at 214. Accordingly, "[i]n 2019, in an effort to control the cost of automobile insurance, the Legislature significantly overhauled the no-fault act." *Id*. See MCL 500.3101 *et seq*., as amended by 2019 PA 21 and 2019 PA 22.

At issue in this case are the caps on payments or reimbursements to medical providers in MCL 500.3157, which provides in relevant part as follows:

(1) Subject to subsections (2) to (14), a physician, hospital, clinic, or other person that lawfully renders treatment to an injured person for an accidental bodily injury covered by personal protection insurance, or a person that provides rehabilitative occupational training following the injury, may charge a reasonable amount for the treatment or training. The charge must not exceed the amount the person customarily charges for like treatment or training in cases that do not involve insurance.

(2) Subject to subsections (3) to (14), a physician, hospital, clinic, or other person that renders treatment or rehabilitative occupational training to an injured person for an accidental bodily injury covered by personal protection insurance is not eligible for payment or reimbursement under this chapter for more than the following:

(a) For treatment or training rendered after July 1, 2021 and before July 2, 2022, 200% of the amount payable to the person for the treatment or training under Medicare.

* * *

(7) If Medicare does not provide an amount payable for a treatment or rehabilitative occupational training under subsection (2), (3), (5), or (6), the physician, hospital, clinic, or other person that renders the treatment or training is not eligible for payment or reimbursement under this chapter of more than the following, as applicable:

(a) For a person to which subsection (2) applies, the applicable following percentage of the amount payable for the treatment or training under the person's charge description master in effect on January 1, 2019 or, if the person did not have

a charge description master on that date, the applicable following percentage of the average amount the person charged for the treatment on January 1, 2019:

> (i) For treatment or training rendered after July 1, 2021 and before July 2, 2022, 55%.

Put simply, if Medicare provides coverage or an amount payable for the treatment, then the cap in Subsection (2) applies; if Medicare does not provide coverage or an amount payable for the treatment, then the cap in Subsection (7) applies. See MCL 500.3157; *Central Home Health Care Servs, Inc v Progressive Mich Ins Co*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 364653); slip op at 4. The no-fault act defines "Medicare" as "fee for service payments under part A, B, or D of the federal Medicare program . . . without regard to the limitations unrelated to the rates in the fee schedule such as limitation or supplemental payments related to utilization, readmissions, recaptures, bad debt adjustments, or sequestration." MCL 500.3157(15)(f).

As the no-fault act was recently amended, there is little caselaw interpreting and applying MCL 500.3157. The most relevant case is *Central Home Health Care*, ___ Mich App at ___; slip op at 2, in which this Court considered the same issue presented here—whether the applicable limit on payments for services was provided by MCL 500.3157(2) or MCL 500.3157(7).

In *Central Home Health Care*, the insurer moved for partial summary disposition, arguing that MCL 500.3157(2) limited the amount that could be recovered for in-home skilled-nursing care and in-home physical therapy. *Id*. In response, the healthcare provider argued that the no-fault act's definition of "Medicare" was limited to fee-for-service payments made pursuant to a "fee-schedule" and that home healthcare services paid for through Medicare's prospective payment system were not subject to the cap in Subsection (2). *Id*. at ___; slip op at 5. This Court concluded that it did not need "to discern the actual difference between a fee schedule and prospective payment system," as "the simple question to answer in determining whether MCL 500.3157(2) or MCL 500.3157(7) applies is whether Medicare covers the service at issue." *Id*. This Court further explained that nothing in the two subsections or the definition of Medicare indicated that the method of calculation of the amount that Medicare would pay was relevant to determining which cap applied. *Id*.

Since this Court's decision in *Central Home Health Care*, two federal district courts have concluded that home-health-care and skilled-nursing care have amounts payable under Medicare. See *Elite Nurse Staffing, LLC v State Farm Mut Auto Ins Co*, 755 F Supp 3d 1008 (WD Mich, 2024); see also *Prof Rehab Serv, Inc v State Farm Mut Auto Ins Co*, unpublished opinion of the United States District Court for the Western District of Michigan, issued September 26, 2024 (Case No. 1:22-cv-1093).[2]

---

[2] Lower federal court decisions may be persuasive, but are not binding on state courts. *Abela v General Motors Corp*, 469 Mich 603, 606; 677 NW2d 325 (2004). Likewise, although not binding on this Court, some state trial courts have issued decisions determining that such in-home services

Defendant argues that there is no amount payable for home-health-aide and skilled-nursing care on a "fee-for-service" basis under "Medicare," as defined by the no-fault act and that the rates relied on by plaintiff cannot be used as a fixed rate, as they are intended to be part of a multistep calculation to establish a bundled rate under the prospective payment system. Moreover, defendant asserts that the type of long-term in-home care provided to Carah is not covered by Medicare, and therefore, it cannot be said that there is an amount payable under Medicare. We disagree.

It bears mention that the purpose of MCL 500.3157(2) and MCL 500.3157(7) is to set a reimbursement cap. Keeping this purpose in mind, we agree with other courts that have considered this issue and found that it seems unlikely that the Legislature would have intended "the hiring of Medicare experts to plow through a vast dataset filled with potential disputes over how to calculate a Medicare payable number, the only function of which is to serve as a cap for the reasonable charge." *Elite Nursing Staffing*, 755 F Supp 3d at 1016. Again, the question is simply whether Medicare covers or provides an amount payable for the treatment at issue, and this determination must be made "without regard to the limitations unrelated to the rates in the fee schedule such as limitation or supplemental payments related to utilization, readmissions, recaptures, bad debt adjustments, or sequestration." MCL 500.3157(15)(f).

Defendant relies heavily on a distinction between a fee-for-service payment model and Medicare's prospective payment system for home healthcare. However, in *Central Home Health Care*, ___ Mich App at ___; slip op at 5, this Court directly addressed this argument and concluded that any distinction between the two payment systems is irrelevant: "the simple question to answer . . . is whether Medicare covers the service at issue." And in this case, the record reflects that home-health-aide and skilled-nursing care are covered by Medicare. Medicare has billing codes for these particular services, and defendant used these codes in its Explanation of Benefits. That these amounts are made under the prospective payment system and may be payments in instances of low utilization or outlier payments does not change that there are amounts payable for such services. Accordingly, because there are amounts payable under Medicare for home-health-aide and skilled-nursing care, the trial court did not err by finding that MCL 500.3157(2) applies.

## B. WHETHER MCL 500.3157(8) APPLIES

Defendant argues further that, even if the limits in MCL 500.3157(2) apply, the trial court erred by failing to then apply MCL 500.3157(8)[3] to limit plaintiff's reimbursement to its average

---

are covered by Medicare and that MCL 500.3157(2) provides the applicable reimbursement cap. See, e.g., *Advisacare Healthcare Solutions, Inc v Farm Bureau Mut Ins Co*, unpublished opinion of the 17th Circuit Court, issued February 10, 2022 (Case No. 21-01054).

[3] MCL 500.3157(8) provides as follows:

> For any change to an amount payable under Medicare as provided in subsection (2), (3), (5), or (6) that occurs after the effective date of the amendatory act that added this subsection, the change must be applied to the amount allowed

charge for home-health-aide and skilled-nursing care on January 1, 2019. We conclude that this issue is waived.

"In civil cases, Michigan follows the raise or waive rule of appellate review." *Tolas Oil & Gas Exploration Co v Bach Servs & Mfg, LLC*, 347 Mich App 280, 289; 14 NW3d 472 (2023). Generally, an issue is properly preserved if it is raised before the lower court. *Walters v Nadell*, 481 Mich 377, 387; 751 NW2d 431 (2008); *Gen Motors Corp*, 290 Mich App at 386. Issues raised for the first time in a motion for reconsideration are not properly preserved for appellate review. *AAA Life Ins Co v Dep't of Treasury*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 365613); slip op at 7. Defendant raised the issue for the first time in its motion for reconsideration. Therefore, this issue is not preserved for appeal.

"[T]his Court may overlook preservation requirements if the failure to consider the issue would result in manifest injustice, if consideration is necessary for a proper determination of the case, or if the issue involves a question of law and the facts necessary for its resolution have been presented." *Smith v Foerster-Bolser Constr*, *Inc*, 269 Mich App 424, 428; 711 NW2d 424 (2006). Although whether MCL 500.1357(8) applies is a question of law, there is a factual dispute about what plaintiff's average charge for treatment was as of January 1, 2019. This factual question is more appropriate for the trial court to consider in the first instance, and we decline to overlook the preservation requirements to reach this question.

Affirmed.

/s/ Michelle M. Rick
/s/ Allie Greenleaf Maldonado
/s/ Daniel S. Korobkin

---

for payment or reimbursement under that subsection. However, an amount allowed for payment or reimbursement under subsection, (2), (3), (5), or (6) must not exceed the average amount charged by the physician, hospital, clinic, or other person for the treatment or training on January 1, 2019.